**Shu Guo KAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–98–00082–CR.

Court of Appeals of Texas,
San Antonio.

June 23, 1999.

Lawrence L. Garcia, Garcia, Teneyuca & Reznicek, L.L.P., San Antonio, for Appellant.

Enrico B. Valdez, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before STONE, GREEN, and ANGELINI, JJ.

## OPINION

Opinion by: CATHERINE STONE, Justice.

Shu Guo Kan appeals from his conviction of indecency with a child by contact.

After returning a verdict of guilty, the jury assessed punishment at sixteen years' imprisonment. Kan challenges his conviction on the grounds that the court-appointed interpreter's incomplete and inaccurate translation denied him his right of confrontation and prevented him from adequately understanding the trial proceedings, that he was not made aware of his right to testify, and that the prosecutor improperly commented on his failure to testify. Kan also complains that certain medical records were improperly admitted into evidence. We overrule these contentions and affirm the judgment of the trial court.

## INTERPRETER

■ The right to have the trial proceedings interpreted to the accused in a language the accused understands is part of the constitutional right to confrontation. *See Baltierra v. State,* 586 S.W.2d 553, 557 (Tex.Crim.App.1979). To avail the right of cross-examination, an accused must comprehend the testimony of the witness or have it explained to him by counsel or an interpreter. *Id.* The accused's right to have the trial proceedings accurately interpreted in a language he understands is also a matter of due process. *Cf. Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (conviction of accused person while he is legally incompetent, and therefore unable to understand trial proceedings, violates due process guarantees). Translation of the proceedings in the native language of the accused ensures that the accused understands the full ramifications and proceedings against him.

Kan's native language is Mandarin Chinese. He is neither conversant in nor has a rudimentary understanding of the English language. Pursuant to article 38.30 of the Code of Criminal Procedure, the trial court appointed and swore in an interpreter to translate the trial proceedings. In points of error one and two, Kan challenges his conviction on the basis that the court-appointed interpreter's incomplete

and inaccurate translation denied him his right to confrontation and prevented him from adequately understanding the trial proceedings. Kan first argues that the trial court erred in appointing an inadequate interpreter. He next contends that his trial counsel was ineffective in failing to object to the incomplete and inaccurate translation. By couching his argument in terms of the "adequacy of the interpreter," we construe his complaints as both an attack on the general competency of the interpreter and the accuracy of her translation. *See Garcia v. State,* 887 S.W.2d 862, 875 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995) (complaint regarding competency of translator is distinguishable from complaint regarding accuracy of individual translation).

### Competency of Interpreter

■ In Texas, an individual called to act as an interpreter in a criminal proceeding is not required to have specific qualifications or training. What is required is sufficient skill in translating and familiarity with the use of slang. *See* TEX.CODE CRIM.PROC.ANN. art. 38.30 (Vernon 1989); *Mendiola v. State,* 924 S.W.2d 157, 161 (Tex.App.—Corpus Christi 1995, pet. ref'd, untimely filed). The competency of an individual to act as an interpreter is a question for the trial court, and absent a showing of abuse of discretion, that determination will not be disturbed on appeal. *Mendiola,* 924 S.W.2d at 161–162; *Montoya v. State,* 811 S.W.2d 671, 673 (Tex. App.—Corpus Christi 1991, no pet.).

In the instant case, the issue of the interpreter's competency surfaced in a pre-trial hearing. At this hearing, the interpreter had difficulty simultaneously translating the proceeding. This difficulty was due in large part to the attorneys speaking quickly without allowing her an opportunity to translate. Due to the vast differences between the English and Chinese languages, the interpreter needed to listen to more than one sentence before she could translate. Often, explained the

interpreter, listening to a whole paragraph before she could properly translate was necessary. The attorneys' use of certain legal words also posed a problem. Once aware of the interpreter's difficulty, the trial court inquired:

**The Court:** I have a question here. You are not translating all of this?

**The Interpreter:** I try to stop because I do not have any chance to speak to him. To speak. She speaks real fast, and I don't have a break. How can I make a translation?

\* \* \* \*

**The Interpreter:** I miss what you are continually saying. Either person. I just don't have a time to break in to speak to him.

\* \* \* \*

**Defense Counsel:** [M]ay it please the Court. My client's sister and friend ... both of them speak Mandarin Chinese or Taiwanese, which is the language of everyone, and maybe they could serve as an interpreter instead of Miss Andre. . . .

\* \* \* \*

**The Court:** Let me ask you something. When we have interpreters here, generally the person is talking and the interpreter is talking, and is one word behind that person who is actually speaking. And I know this, because I speak Spanish, I understand Spanish, and I also speak and understand English. So when I see someone speaking in Spanish and interpreting in Spanish, I know how it's done. But here it wasn't being done, so I'm a little concerned. How do you anticipate that you are going to be able to interpret as we go through this trial?

**The Interpreter:** I cannot interpret at the same time, like one sentence behind, because both attorneys speak very fast, also speaking in legal terms.

\* \* \* \*

**The Interpreter:** [I] don't know what is a code (sic) and all of that. That is not my profession. So I can interpret other things, if argument, unless you will have to give me a little time, a break.

**The Court:** Okay. As far as the legal terms are concerned, can you translate those?

**The Interpreter:** I can translate most of them, but some I would have to ask, like some words I have to ask what it means.

\* \* \* \*

**The Court:** The only thing we can do then, you feel comfortable interpreting?

**The Interpreter:** Yes. . . .

\* \* \* \*

**The Court:** [T]he only thing that we can do is to make sure that you have time to ask your questions and then in turn interpret for the Defendant. That's all we can do.

**The Interpreter:** Everyone, will you please just speak in shorter sentences or shorter paragraphs and stop, so I have a chance of explaining.

The record thus reveals that the interpreter's difficulty was not due to her ineptitude for the task at hand, but instead was due to factors beyond her control, such as the attorneys speaking quickly without allowing an opportunity for translation. On this record, we are unable to conclude that the trial court abused its discretion in determining that the interpreter was competent. A review of the entire record reveals that throughout the remainder of the trial, aside from isolated instances where the interpreter asked for clarification or reminded the parties to speak slower or louder, the interpreter experienced no problems.

## Accuracy of Translation

 Kan also complains that the translation was inaccurate. The accuracy of the translation was a fact question properly addressed to the trial court. *See Garcia*, 887 S.W.2d at 875. We cannot review this issue "because there is no legal issue presented; it is a factual question which ultimately only the jury can answer and which is not reviewable by [an appellate] court." *Id.*[1] Because this complaint was not lodged in the trial court, Kan has waived any alleged error from inaccuracies in the translation. *See id.* Notwithstanding *Garcia's* bar to appellate review, we note that Kan has failed to point to any specific evidence in the record of inaccurate translation. This issue was raised in a motion for new trial; however, because the motion was not properly supported by sworn affidavit, the trial court properly refused to conduct a hearing. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex.Crim. App.1994) (as prerequisite to hearing on motion for new trial, and as matter of pleading, motion must be supported by affidavit of either defendant or someone else specifically showing truth of grounds asserted). Point of error number one is overruled.

## Ineffective Assistance of Counsel

 In his second point of error, Kan argues that he was denied effective assistance of counsel because his trial counsel failed to object to the interpreter's incomplete and inaccurate translation. To be prevail on such a claim, Kan must show that counsel's representation was deficient, and that such deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). Failure to show either deficient performance or prejudice defeats a claim of ineffectiveness. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert denied*, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). When it is easier for a court to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, the court should follow that course. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. Following *Strickland's* instruction, our discussion focuses on the lack of prejudice from trial counsel's failure to challenge the accuracy of the translation.

As noted above, Kan has failed to identify any specific inaccuracy or omission in the translation. He has also failed to present proof of his inability to confront a particular witness or inability to effectively communicate with counsel. In short, he has failed to demonstrate harm from the interpreter's performance. Because Kan merely presents an issue of potential harm, he has failed to satisfy his burden under *Strickland*. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *see also Montoya*, 811 S.W.2d at 673 (any error is harmless where appellant cannot point to specific passages in translation that prevented him from confronting witnesses). Point of error number two is overruled.

### RIGHT TO TESTIFY

 In points of error three and four, Kan complains that both the trial court and defense counsel failed to advise

---

1. The *Garcia* court likened a translation's accuracy to the issue of witness credibility:

 We, as an appellate court, can no more determine whether a translation is accurate or which of two translations is more accurate, than we can determine which of two witnesses is telling the truth, or which of the two is more truthful; these are questions for the factfinder.... Just as he must impeach the lying witness at trial to cure the lie, a defendant must impeach the inaccurate or incomplete translation to cure it. As a question of fact, appellant must settle the question of a translation's accuracy at trial by impeaching the translation; cross-examination of the witness presents the most convenient vehicle, but impeachment may be accomplished by many other means.
 *Garcia*, 887 S.W.2d at 875.

him about his right to testify. We have found no authority nor has any authority been cited to this court which places such a duty upon the trial court and, therefore, we reject Kan's argument to the extent it relates to the trial court. In doing so, however, we do not quarrel with the proposition that defense counsel had the duty to inform and advise Kan about his right to testify. The record indicates, however, that defense counsel discharged her duty.

During voir dire, with Kan and the interpreter present, defense counsel posed the following hypothetical question to the venire panel:

> What if—hear the preface, what if—me, and Shu Guo Kan decide, for whatever reason, whether it's due to language barrier, whether it's due to him not understanding the procedures well enough, or him being afraid that you won't understand his customs, culture, body language, okay, *what if he decides not to take the stand? And we haven't made that decision yet, I want you to know. What if he decides not to?* Will you hold it against him? Will you sit there and think, hum, that ... Shu Guo Kan didn't take the stand, he must be guilty.

In light of this excerpt, we reject Kan's contention that defense counsel failed to inform him of his right to testify.

■ Even assuming Kan's true complaint is that defense counsel denied him his right to testify, he is not entitled to prevail on this issue because the record does not support such a contention. This issue was also raised in Kan's motion for new trial, but as previously discussed, the trial court properly refused to conduct a hearing because the motion was not supported by sworn affidavit testimony. There is no direct proof that Kan was prevented from asserting his right to testify. Points of error three and four are overruled.

## IMPROPER JURY ARGUMENT

■ In his seventh point of error, Kan complains that the trial court erred in failing to sustain his objection to the prosecutor's comment on his failure to testify. Kan also contends on appeal that the prosecutor's argument impermissibly shifted the burden of proof. Kan's second-stated argument was not made at trial and, therefore, cannot be raised for the first time on appeal. *See Earnhart v. State*, 582 S.W.2d 444, 449 (Tex.Crim.App.1979). Our review of the complained-of argument is thus limited to determining whether it violated Kan's constitutional right to remain silent.

■ It is well settled that the prosecution may not comment on the accused's failure to testify. *Cockerham v. State*, 729 S.W.2d 742, 746 (Tex.Crim.App.1987); *Hogan v. State*, 943 S.W.2d 80, 81 (Tex. App.—San Antonio 1997, no pet.). Such a comment offends both State and Federal Constitutions. *See* U.S. CONST. AMEND. V; TEX. CONST. art. I § 10; *Nickens v. State*, 604 S.W.2d 101, 104 (Tex.Crim.App.1980). Language which is manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify, violates an accused's constitutional rights. *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex.Crim.App.1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). Implied or indirect comments on the accused's failure to testify need not necessarily result in reversal. *Id.* Reversal is warranted, however, if a prosecutor makes an impermissible comment on an accused's failure to testify and directs the jury's attention to the absence of evidence that only the defendant can supply. *Id.* at 491.

The complained-of argument occurred during the prosecutor's summation of the State's evidence:

> **The prosecutor:** First of all, ladies and gentlemen, this Defendant here is guilty.

> \* \* \* \*

> **The prosecutor:** He's a child molester, he's a child predator, and he should take

responsibility for his actions. He is guilty beyond a reasonable doubt. How do we know that? Now what the attorneys say; not what I say, not what defense counsel says. That's not evidence. That's not what you rely upon. You rely upon the witnesses that talk to you and told you what happened. That's the evidence.

The pictures. Physical evidence. The medical records the doctor came and talked to you about. That is evidence. That's what you consider. Not what we argue. And what did the evidence say? Did sexual contact occur? Touching the breasts. We put on the witnesses. Not only touching of the breasts, but much, much more. That was evidence, beyond a reasonable doubt.

*What contradicted that sexual conduct occurred? What did Defendant put on there to show that sexual contact did not happen?*

**Defense counsel:** Objection, Your Honor, as to what did (sic) the Defendant put on there. That is a back-door suggestion that my client failed to take the stand in (sic) his behalf, and it's highly prejudicial.

**The court:** That's overruled, and that's not exactly what he's saying.

The State argues that the prosecutor's remarks were not improper because they did not call to the jury's attention an absence of evidence that only Kan could have provided. The State maintains that the rhetorical questions concern evidence about sexual conduct generally, not specifically Kan's involvement in that conduct; thus, the statements were not calling to the jury's attention the absence of evidence that only Kan could have provided. We agree. Here, the prosecutor was summarizing the strength of the State's case— the complainant's testimony coupled with supporting medical testimony. The rhetorical questions posed did not necessarily call the jury's attention to the absence of evidence that only Kan could supply.

Rather, as noted by the State, the remarks emphasized the absence of evidence challenging the State's medical testimony. Point of error number seven is overruled.

## ADMISSION OF MEDICAL RECORDS

■ Kan next argues that medical records replete with hearsay and prejudicial information were improperly admitted into evidence. In point of error number five, Kan complains that the trial court erred in admitting such records into evidence. In point of error number six, Kan asserts that his trial counsel was ineffective for failing to timely object to the records' introduction into evidence. Because a timely objection to the introduction of the medical records was not made at trial, our review of this issue is limited to determining whether trial counsel was deficient in failing to timely lodge an objection to the introduction of the records. *See* TEX. R.APP.P. 33.1.

Rule 803(6) of the Texas Rules of Evidence provides that records kept in the course of a regularly conducted business activity are not excluded by the hearsay rule. TEX.R.EVID. 803(6). A document is properly admitted into evidence under Rule 803(6) if it is established that the document was (1) made at or near the time of the events they record, by or from information transmitted by a person with knowledge of the events; and (2) made and kept in the course of a regularly conducted business activity. *Id.* The necessary predicate for introduction of a business record may be shown by offering either (1) the testimony of a records custodian or other qualified witness, or (2) an affidavit that complies with Rule 902(10). *See* TEX.R.EVID. 803(6), 902(10). Rule 803(6) does not require the witness laying the predicate for the introduction of the records to be the creator of the records or to have personal knowledge of the content of the records. TEX.R.EVID. 803(6). The witness need only have personal knowledge of the manner in which the records were prepared. *Id.; see Butler v. State,*

872 S.W.2d 227, 238 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995).

In this case, the State introduced records generated after an examination of the complainant through the testimony of Herlinda Escajeda, custodian of records for the Alamo Children's Advocacy Center. With her testimony, the State laid the requisite predicate for admissibility of the records under Rule 803(6). She testified that she had care, custody, and control of the records of the Alamo Children's Advocacy Center; that those records were kept in the regular course of business; that the entries in the records were made by someone with personal knowledge of the events; and that the entries were made at or near the time of the event which is recorded in the records. The record reveals that the medical records fell within the "business records exception" of Rule 803(6), and thus were not inadmissible on the basis of hearsay.

 Kan also argues that his trial counsel was ineffective for failing to make a Rule 403 objection to the medical report. Under Texas Evidence Rule 403, otherwise relevant evidence is rendered inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.EVID. 403. We note that "virtually all evidence offered by the prosecution will be prejudicial to the defendant, and thus, only unfair prejudice should be excluded." *Caballero v. State,* 919 S.W.2d 919, 922 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Here, the records are damaging to Kan because the conclusions support the complainant's testimony. Much of the evidence in the records that Kan finds objectionable was already before the jury through the complainant's testimony. Thus, the trial court would have been within its discretion to overrule such an objection. Because the failure to object to admissible evidence does not constitute ineffective assistance of counsel, *see McFarland v. State,* 845 S.W.2d 824, 846

(Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993), *overruled on other grounds,* 915 S.W.2d 9 (Tex.Crim.App.1994), we overrule points of error five and six.

The judgment of the trial court is affirmed.