Affirmed and Opinion filed November 25, 2003















Affirmed and
Opinion filed November 25, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00318-CR

____________

 

JESUS P. SALAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

______________________________________________

 

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 864,644

______________________________________________

 

O P I N I O
N

            Appellant,
Jesus Salas, was convicted by a jury of the felony offense of aggravated sexual
assault and sentenced to twenty years’ confinement.  In six issues, appellant contends (1) the
trial court erred in admitting extraneous offense evidence; (2) his
constitutional right to testify during the punishment phase as granted under
the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution
was violated; (3) his right to testify under article I, section 10 of the Texas
Constitution and article 38.08 of the Texas Code of Criminal Procedure was
violated; and (4) he was denied effective assistance of counsel.  We affirm.

 class=Section2>



I.  Factual Background

            Z.C.
met appellant in July 2000 and went on a first date with him shortly
thereafter.  Because Z.C. did not know
appellant well, she arranged for him to pick her up at a location near her
home.  Z.C. testified that while driving,
appellant informed her that he had gone by the restaurant where she worked to
see her and the manager had “run him off.” 
Appellant then became angry, screaming at Z.C. and grabbing her arm.[1]  Subsequently, appellant calmed down and
apologized for his behavior.  To ease the
tension, they changed the subject and discussed appellant’s participation in
various car show contests.  Appellant
told Z.C. he had won many trophies in these competitions and offered to show
them to her at his apartment.  Z.C.
agreed to go.  

            The
events that transpired after Z.C.’s arrival at the
apartment are disputed.  According to
Z.C., appellant offered her alcoholic beverages which she refused.  Appellant then became agitated at her for
“wasting the drink.”  Z.C. told appellant
she needed to use the restroom, but as she approached it, appellant started
screaming at her, accusing her of “playing with him,” having “hickies” on her neck, and lying to him about having a
boyfriend.  As Z.C. tried to enter the
restroom, appellant attacked her from behind and pointed a gun at her
face.  Z.C. grabbed on to the gun,
pushing it away.  Appellant told Z.C. to
let go because she was going to shoot her feet, but she held on tightly and
walked with appellant as he led her back to the living room.  Z.C. testified that during this struggle,
appellant told her “nobody messes with him, his family is in the Mafia and
they’re very powerful.” When they entered the living room, appellant abruptly
grabbed the gun and shoved Z.C.’s chest, forcing her
to fall backwards onto a mattress on the floor. 
Appellant sat on the mattress with Z.C. and, with his hand on the gun,
told her to take her clothes off.  At
first, Z.C. refused, but appellant pointed the gun at her again, and she took
off her shirt and jeans.  Appellant 

 class=Section3>

forcibly removed her bra and underwear.  As Z.C. cried and protested, appellant
sexually assaulted her.

            After
the assault, appellant told Z.C. she was going to be his girlfriend and move in
with him.  He told her his family “runs Houston,” some of
his relatives were police officers and lawyers, and every time he got a ticket
it was written off.  He also told her he
was going to do a “drive-by”[2] with
some of his friends at the restaurant where she worked, because, as Z.C.
testified, “they had embarrassed him and ran him away.”  Z.C. was frightened and wanted to get away
from appellant, but realized she did not know the code for the access gates to
exit his apartment complex.  She
convinced appellant to take her to an eatery and then drop her off at a
friend’s apartment.[3]  She revealed the events to her friend and
several hours later, they went to a hospital to preserve physical evidence of
the sexual assault.  The hospital staff
thoroughly examined Z.C. and completed a rape kit.  Z.C. testified that for a few days
thereafter, appellant called her at work using different identities.  Although Houston Police Department
Investigator Pedro Moreno contacted Z.C. about the sexual assault, Z.C. did not
make a full statement to the police until approximately two months later
because she feared appellant would harm her or her family. 

II.  Discussion

A.  Whether the
Trial Court Erred in Admitting Extraneous Offense Evidence

            In
appellant’s first issue, he contends the trial court erred in admitting
extraneous misconduct evidence during the guilt/innocence phase of the
trial.  Specifically, he argues the trial
court erred in permitting Z.C. to testify that after the sexual assault
occurred appellant told her he planned to do a drive-by shooting at her place
of employment.  During trial, appellant
objected to this evidence as concerning an “extraneous offense,” “not probative
of anything in [the] case” and prohibited under Texas Rule of Evidence 404.[4]  Without any response by the State, the trial
court overruled the objection and admitted the testimony.  

            Appellant
argues the threat has no relevance beyond character conformity because the
statement occurred after the alleged sexual assault and did not involve the
threat of imminent death or serious bodily injury as charged in the indictment.  The State responds that the statement is
relevant and admissible to (1) rebut appellant’s theory that the sexual assault
was consensual; (2) depict appellant’s intent because the fear of reprisals
aimed at Z.C. and others at her work place would make her less likely to report
the sexual assault; and (3) provide the jury with a full understanding of the
circumstances surrounding the offense so they could properly evaluate the
evidence.  

1.  Standard of
Review

            We
apply an abuse of discretion standard to determine whether a trial court erred
in the admission of evidence.  Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).  We
will reverse the trial court’s ruling only if the decision falls outside the
“zone of reasonable disagreement,” given the law and pertinent circumstances.  Jones v.
State, 944 S.W.2d 642, 651 (Tex. Crim. App.
1996).  

            Under
Rule 404(b), evidence of “other crimes, wrongs, or acts,” although relevant, is
not admissible to prove the character of a person in order to show that he
acted in conformity therewith.  Tex. R. Evid.
404(b).  The evidence, however, may be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Id.; Montgomery v. State, 810 S.W.2d 372, 387
(Tex. Crim. App. 1991) (op. on reh’g).  Once an objection to the evidence is made,
the proponent of the evidence has the burden to show the “other crime, wrong,
or act” has relevance apart from tending to prove the character of the person
and conforming action.  Montgomery, 810
S.W.2d at 387.  If the trial court
determines that the evidence has no relevance apart from character conformity,
then the evidence is inadmissible and the trial court has no discretion to
admit it.  Id. 

2. 
Admissibility of the Statement Under Rule 404(b)

            We
must determine if the trial court abused its discretion in admitting the
proffered evidence as relevant for a purpose other than to show character
conformity.  See id. at 391, 393–94. 
Evidence is relevant if it has “any tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.”  Tex.
R. Evid. 401. 
Extraneous offense evidence is relevant if the evidence tends to (1) establish
some elemental fact, such as intent; (2) establish an evidentiary fact, such as
motive, opportunity, or preparation, that inferentially leads to an elemental
fact; or (3) rebut a defensive theory.  Montgomery, 810
S.W.2d at 387; see Robbins v. State,
88 S.W.3d 256, 262 (Tex. Crim. App. 2002) (stating
that extraneous offense evidence is relevant to rebut a defensive theory); Santellan v. State, 939 S.W.2d 155, 168–69 (Tex. Crim. App. 1997) (en banc). 
A trial court is given wide latitude to admit or exclude evidence of
extraneous offenses.  Mozon v. State, 991 S.W.2d 841, 846 (Tex. Crim.
App. 1999); Hudson v. State, 112 S.W.3d 794, 801 (Tex. App.—Houston [14th
Dist.] 2003, no pet.).

            At
trial, appellant sought to prove the intercourse was consensual.  He also contended Z.C. delayed reporting the
assault because she never intended to press charges, but was subsequently
pressured into doing so.  The State
proffered evidence to refute these contentions through the testimony of Z.C.
and Officer Moreno.  The State
established appellant forcibly raped Z.C. by threatening her at gunpoint.  There was also proof that 

 class=Section4>

appellant fostered a continued fear of him by
informing Z.C. he was well connected to people in the city’s
infrastructure.  The testimony also showed
that appellant told Z.C. he had a circle of friends that would do anything for
him, including assisting him with a drive-by shooting at her place of
employment.  This evidence supports Z.C.’s testimony that she was afraid appellant would
retaliate against her or her family if she reported the crime.  It is also relevant to show the context
within which the subject offense occurred because the jury has the right to
hear what events surrounded the criminal act charged so that they may
realistically evaluate the evidence.  See Williams v. State, 646 S.W.2d 653,
654 (Tex. App.—Fort Worth 1983, no pet.).

            Extraneous
offense evidence is also relevant and admissible to explain why a victim may
delay in reporting sexual abuse.  See Brown v. State, 657 S.W.2d 117, 119
(Tex. Crim. App. 1983) (holding that threats to kill
victim’s family was admissible to show a reason for victim’s delayed outcry); Wilson v. State, 90 S.W.3d 391, 394
(Tex. App.—Dallas 2002, no pet.).[5]  The State asserts the evidence of the threat
was admissible as proof of appellant’s intent to instill in Z.C. the fear of
reprisal, making her less likely to report the sexual assault.  Z.C. specifically testified that based upon
appellant’s threats she was frightened he would use his resources to find her
if she reported the sexual assault. 
Officer Moreno testified he had a difficult time convincing Z.C. to make
a statement because she was “very emotional . . . .  She was just crying, she could not complete a
sentence, she had great difficulty discussing the case.”  Moreno contacted
her numerous times.  During each
conversation, Z.C. stated that she was not emotionally ready to discuss what
had happened to her.  Z.C. testified she
was afraid of talking to Moreno because
she thought he was friends with appellant. 
When she finally gave her statement, Moreno testified
she “kept shaking, kept putting her hands over her mouth, just crying, had a
very hard time [s]ometimes even trying to finish some
of the sentences she was telling me.”  

 class=Section5>

            The
drive-by shooting threat, made immediately after the sexual assault, is
relevant and admissible to support the State’s position that Z.C.’s delay in reporting the assault was not because there
was consensual intercourse, as appellant contends, but because she feared appellant
and was terrified by what he told her he was capable of accomplishing.  Accordingly, it was in the zone of reasonable
disagreement for the trial court to find the evidence relating to the threat of
a drive-by shooting to be relevant and admissible.  Therefore, we hold that the trial court did
not abuse its discretion in admitting this evidence and overrule appellant’s
first issue. 

B.  Whether the
Trial Court Erred in Denying Appellant’s Motion for New Trial

            In
his second through fifth issues, appellant claims he was denied his
constitutional right to testify.[6]  Specifically, he contests trial counsel’s
alleged refusal to call him as a witness in the punishment phase of the
trial.  He also contests the subsequent
denial of his motion for a new trial where he asserted his right to testify
during the punishment phase was violated.

            It is
well established the trial court has broad discretion to grant or deny a motion
for new trial.  Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim.
App. 1995) (establishing that a trial court’s ruling denying motion for new
trial is reviewed under an abuse of discretion standard).  We do not substitute our judgment for that of
the trial court, but rather determine whether the trial court’s decision was
arbitrary or unreasonable.  Id.  In
assessing the evidence presented at the new trial hearing, the trial judge may
properly consider the interest and bias of any witness, and is not required to
accept as true the testimony of the accused or any defense witness simply
because it was uncontradicted.  Valle
v. State, 963 S.W.2d 904, 908 (Tex. App.—Texarkana 1998, pet. ref’d); Reissig v. State,
929 S.W.2d 109, 113 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d); Messer v.
State, 757 S.W.2d 820, 828 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d).

            The
trial court was in the best position to determine the credibility of
appellant’s testimony during the new trial hearing.  Although appellant’s trial counsel was not
called as a witness to contradict appellant’s testimony, the trial court had
the discretion to disregard appellant’s uncontradicted
and self-serving testimony.  By failing
to call appellant’s trial counsel as a witness at the hearing, the trial court
could infer the testimony would not have been supportive of appellant’s contentions.  Regardless, appellant’s motion for new trial
was based solely on violations of appellants right to testify under article
1.05 of the Texas Code of Criminal Procedure; article 1, section 10 of the
Texas Constitution; and the Sixth Amendment of the United States
Constitution.  He did not complain of
ineffective assistance of counsel in his motion for a new trial.  Restraining a defendant’s testimony might
implicate the defendant’s right to effective assistance of counsel, but it does
not implicate his right to testify.  Hollenbeck v. Estelle, 672 F.2d 451, 453
(5th Cir. 1982).  Therefore, the trial
court did not abuse its discretion in denying appellant’s motion for a new
trial based on the alleged violation of his right to testify.[7] 

                                              C.  Ineffective Assistance of Counsel

            Appellant,
in his sixth issue, alleges he was denied effective assistance of counsel in
violation of his rights guaranteed by the Sixth Amendment because his trial
counsel failed to call him as a witness during the punishment phase of his
trial and failed to inform the trial court of his desire to testify.  The right to testify can only be waived by a
defendant, not his counsel.  Emery v. Johnson, 139 F.3d 191, 198 (5th
Cir. 1998) (op. on reh’g).  Such a waiver must be made by a defendant
knowingly and voluntarily.  Id.  

            Whether
a defendant received effective assistance of counsel is governed by the Strickland test promulgated by the
United States Supreme Court.  Strickland v. Washington, 466 U.S. 668
(1984).  The two-prong test applies at
both the guilt/innocence and punishment phases of the trial.  Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App.
1999) (en banc).  To prove an ineffective
assistance of counsel claim, the defendant must first show that counsel’s
performance was deficient to the extent his or her assistance fell below an
objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).  Second, the defendant must affirmatively
prove prejudice.  Id.  Under the
second prong, the record must show a reasonable probability that the outcome of
the proceeding would have been different, but for counsel’s error.  Perez
v. State, 960 S.W.2d 84, 88 (Tex. App.—Austin 1997, no pet.).  The second prong of Strickland is automatically satisfied in circumstances pertaining
to an alleged violation of the right to testify because it is a fundamental
constitutional right designed to guarantee a fair trial.  Id. (citing Rock v. Arkansas, 483 U.S. 44, 53
n.10 (1987)).  Therefore, our analysis
focuses on determining whether appellant’s trial counsel provided assistance
that fell below the range of professional competence.  

            Appellant
bears the burden to prove by a preponderance of the evidence that his trial
counsel was ineffective.  Thompson, 9 S.W.3d at 813; Cannon v. State, 668 S.W.2d 401, 403
(Tex. Crim. App. 1984) (en banc).  We must look to the totality of the
representation and the circumstances in each case to evaluate the effectiveness
of counsel.  Thompson, 9 S.W.3d at 813. 
An allegation of ineffectiveness must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness.  Id.; Jackson v. State, 973 S.W.2d 954, 955
(Tex. Crim. App. 1998) (en banc); McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996) (en banc).  We further analyze a claim of ineffective
assistance of counsel by considering the reality of the situation facing
defense counsel at the time of the acts and not years later.  Black
v. Cockrell, 314 F.3d 752, 754 (5th Cir. 2002).  When the record does not contain a specific
explanation for defense counsel’s actions, an appellate court cannot reverse a
conviction based upon a claim of ineffective assistance of counsel.  Bone v.
State, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002).

            The
record presented for our review is inadequate. 
There is no evidence for us to consider in determining whether
appellant’s trial counsel did not call appellant to the stand because appellant
voluntarily and knowingly waived his right to testify during the punishment
phase.  Because appellant did not raise
the issue of ineffective assistance of counsel during his motion for new trial,
appellant’s trial counsel was not called as a witness or given the opportunity
to testify as to the interactions between them.  “[C]ounsel should
ordinarily be accorded an opportunity to explain her actions before being
condemned as unprofessional and incompetent.” 
Id. at
836.  When the trial record is incomplete
and does not provide enough evidence on which to base a reversal, we will
refrain from speculating as to what exactly happened in the trial court.  Id. at 833
n.13, 836; Thompson, 9 S.W.3d at
813–14.  Because appellant’s motion for
new trial did not pertain to ineffective assistance of counsel, there is no
evidence in the record (other than appellant’s testimony, which the trial court
apparently did not find credible) as to whether trial counsel and appellant
came to an agreement based upon sound trial strategy that appellant should not
take the stand during the punishment phase. 
Appellant has not overcome the strong presumption that counsel performed
within reasonable standards.[8]  See
Bone, 77 S.W.3d at 833.  Therefore,
we overrule appellant’s sixth issue.  

            For the foregoing reasons,
appellant’s conviction is affirmed.

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed November
 25, 2003.

Panel
consists of Justices Yates, Edelman, and Guzman.

Do Not
Publish — Tex. R. App. P.
47.2(b).

 











            [1]  The facts as portrayed by Z.C. were
contradicted by appellant’s testimony at trial. 
Appellant testified that he did not become aggressive in the car or grab
her arm.  





            [2]  Appellant, in his brief, clarifies that this
is an “alleged threat of a drive-by shooting.”





            [3]  Z.C. told appellant he was taking her to her
sister’s apartment so she could baby-sit, but she actually went to a former
boyfriend’s apartment because she did not want appellant to know where she or
any member of her family lived. 





            [4]  Although appellant objected at trial under
“Rule 404,” he is specifically referring to Rule 404(b) as evidenced by his
reference to an extraneous offense at trial and the arguments made in his
appellate brief.  





            [5]  See
also State v. Bynum, 433 S.E.2d 778, 780–81 (N.C. Ct. App. 1993) (holding
that defendant’s threat to kill victim in unrelated incident was relevant to
show delay in reporting the sexual offense at issue).





            [6]  Whether this issue has been preserved for our
review is doubtful.  During the
punishment phase, appellant did not inform the trial court of his desire to
testify.  Failure to indicate to the
trial court appellant’s desire to testify waives any complaint on appeal.  See
Burks v. State, 792 S.W.2d 835, 838 (Tex. App.—Houston [1st Dist.] 1990,
pet. ref’d). 
As a general rule, appellate courts will not consider any error, even
those of constitutional dimension, not called to the trial court’s attention at
a time when it might have been avoided or remedied by that court.  See
Russell v. State, 665 S.W.2d 771, 777–78 (Tex. Crim.
App. 1983).  

 





            [7]  On appeal, the cases that appellant cites in
support of his contention that his right to testify was violated, and therefore
he was entitled to a new punishment hearing (and by implication, his motion for
new trial should have been granted), involve situations where the trial court
was made aware of the defendant’s desire to take the stand and the court flatly
refused.  See Pady v. State, 908 S.W.2d 65, 66–68
(Tex. App.—Houston [1st Dist.] 1995, no pet.) (holding trial court abused its
discretion in refusing to allow appellant to testify during the punishment
phase of trial after being informed by appellant’s counsel of his desire to
testify); Hebert v. State, 836 S.W.2d
252, 254–55 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d)
(holding trial court abused its discretion in refusing to allow appellant to
take the stand after being informed by appellant of her desire to
testify).  These cases are
distinguishable.  Here, appellant testified
during the hearing on his motion for new trial that he did not inform the trial
court of his desire to testify during the punishment phase.  Furthermore, the trial court does not have
the duty to inform a defendant about his or her right to testify at any phase
of the trial.  Kan v. State, 4 S.W.3d 38, 44 (Tex. App.—San Antonio 1999, pet. ref’d).  Therefore,
the trial court neither violated appellant’s right to testify nor erred in
denying his motion for new trial.  See Hollenbeck v. Estelle, 672 F.2d 451,
452–53 (5th Cir. 1982) (holding that appellant, who had been informed of his
right to testify but failed to inform the trial court of his desire to do so
did not have his constitutional rights violated).  





            [8]  At the hearing on his motion for new trial,
appellant stated that he wanted to testify during the punishment phase about
his military service with the United States Navy.  In addition to his six military awards and
service in the Persian Gulf and Kuwait, appellant wanted to
testify about his post-military employment. 
At the punishment hearing, appellant’s mother testified to essentially
the same facts the appellant asserts he would have presented, including his
background, education, and work history. 
Although his account perhaps would have been more detailed, his mother’s
testimony may have been preferable because she was not subject to as extensive
a cross-examination as appellant would have been.  After all, if a defendant exercises his right
to testify he is subject to the same rules governing examination and
cross-examination as any other witness, whether he testifies at the
guilt/innocence stage or at the punishment stage of the trial.  Cantu
v. State, 738 S.W.2d 249, 255 (Tex. Crim. App.
1987) (en banc).