Opinion issued February 7, 2008



 









 




In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00790-CR






SEARN MOUN, A/K/A KIM LOREN, A/K/A MOA SOEUN, 

A/K/A MOUN SEN, A/K/A CHAN KNIP, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause No. 48,661




 

MEMORANDUM OPINION


 Appellant, Searn Moun, a/k/a Kim Loren, a/k/a Moa Soeun, a/k/a Moun Sen,
a/k/a Chan Knip, was charged by indictment with aggravated assault with a deadly
weapon, namely, a knife. See Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon Supp.
2007). Appellant pleaded not guilty. A jury found appellant guilty, but was unable
to agree on punishment and a mistrial was declared regarding punishment. A second
jury assessed punishment at 15 years' confinement and a fine of $5,000.

 In two issues, appellant contends that the trial court erred (1) by refusing to
instruct the jury on self-defense and (2) by denying her motion for new trial because
the evidence shows that "the interpreter at trial [was] incompetent in translating the
proceedings."

 We affirm.

Background

 Appellant and the complainant, Sophear Som, were friends who shared an
apartment and worked together at the Seafood Hut restaurant in Clute, Texas. Som
owned the Seafood Hut, and appellant worked as a cook. Som and appellant
frequently argued over financial matters.

 When Som arrived to open the restaurant on the morning of July 5, 2004, she
discovered that the refrigerator had been unplugged and that the food inside was
spoiled. Som went back home and instructed appellant to come and help clean out
the refrigerator. 

 According to Som, appellant was angry when she was asked to help clean out
the refrigerator. While they were cleaning, Som threatened to fire appellant. 
Afterwards, while Som was replenishing oil in the deep fryer, appellant stabbed Som
in the back of the head. Som turned around and saw appellant holding a white
butcher knife. Appellant continued to come at Som with the knife and the fight
moved outside. Appellant repeatedly stabbed Som in the arm and throat. According
to Som, appellant said, "Today, I going [sic] to kill you." Som also stated that
appellant bit her several times and kicked her in the chest, saying, "Die, die, die." 
When Som struggled to get to her feet, appellant continued to stab her with the knife. 
Eventually, Som was able to get up and run to a neighboring business for help. 
Appellant chased her part of the way, then stopped. Som was taken to the hospital
by Life Flight.

 According to appellant, who is Cambodian and testified through an interpreter
at trial, Som was angry while they cleaned out the refrigerator and Som pushed
appellant into a table, which caused appellant to bleed from the mouth and to briefly
lose consciousness. Appellant asserts that she felt a knife, grabbed it, and swung
back. Appellant testified as follows, in pertinent part: "It's an accident that I get [sic]
my hand on the knife. I don't know anything. I get it. I just try to grab and swing
back." Appellant asserted that she swung back "to defend [her]self," but maintained
that it was "just the accident that I swing [sic]." Appellant testified that she feared
that Som was trying to kill her because Som had, during an argument over a boyfriend
two weeks prior, threatened to kill appellant with a hammer. Som did not have a
hammer or any other weapon at the time of the incident at issue. Appellant testified
that she did not intentionally stab Som; rather, Som was repeatedly jumping on
appellant and was cut by the knife as Som tried to take it from appellant. Appellant
feared that if Som got the knife, Som would kill her.

 Appellant further testified that the fight moved from the kitchen to outside the
restaurant, where she and Som both fell to the ground. Appellant testified that she got
to her feet, but that Som could not get up because Som's hair became entangled in
wiring on the air conditioner. Appellant testified that, while Som was lying on the
ground with her hair caught in the wiring, Som hit appellant in the knee with a palm-sized rock. Appellant testified that she did not bite Som's arms; rather, she removed
a hair clip from Som's head and used it to pinch Som's arms. Appellant testified that
she then cut Som's hair free from the air conditioner and then ran to a nearby gas
station to escape. 

 According to Som's medical report, which was read into evidence, Som
suffered multiple stab wounds to her neck, hands, and scalp. Som testified that she
was stabbed a total of 32 times. Detective J. Barnard of the Clute Police Department
testified that appellant's injuries were confined to her mouth.

 The jury was instructed that it could find appellant guilty of aggravated assault 
or the lesser-included offense of deadly conduct. Appellant had requested that the
jury also be instructed on the law of self-defense, which the trial court denied.

Instruction on Self-defense

 In her first issue, appellant contends that the trial court erred by refusing to
instruct the jury on the law of self-defense. At the end of trial, appellant requested
both an instruction on the lesser-included offense of deadly conduct and an
instruction on self-defense. The trial court instructed appellant that the law would not
allow her to have both instructions and that she would have to choose one. Appellant
chose the instruction on deadly conduct. On appeal, appellant contends that the trial
court erred by concluding that the instructions are incompatible and by denying her
requested instruction on the law of self-defense. 

 We review alleged charge error by first determining whether error existed in
the charge and, if so, analyzing whether sufficient harm resulted from the error to
warrant reversal. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

 When evidence from any source raises a defensive issue and the defendant
properly requests a jury charge on that issue, the trial court must submit the issue to
the jury. Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). A
defendant is entitled to an instruction on any defensive issue raised by the evidence
regardless of whether the evidence is weak or strong, unimpeached or contradicted,
and regardless of what the trial court may think about the credibility of the defense. 
See Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). Here, appellant
was entitled to an instruction on every theory raised, even if the evidence was
inconsistent or supported more than one defensive theory, or the defenses themselves
were inconsistent or contradictory. See Johnson v. State, 715 S.W.2d 402, 406-07
(Tex. App.--Houston [1st Dist.] 1986, pet. ref'd) (citing Booth v. State, 679 S.W.2d
498, 500-01 (Tex. Crim. App. 1984)). 

 A defendant bears the burden to produce some evidence to support her
self-defense claim. See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). 
If the evidence, which is viewed in the light most favorable to the defendant, does not
establish self-defense, then the defendant is not entitled to an instruction on the issue. 
Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); Guilbeau v. State, 193
S.W.3d 156, 159 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd).

 Here, appellant was charged with having assaulted Som by intentionally,
knowingly, or recklessly causing her bodily injury by stabbing her with a deadly
weapon, namely, a knife, which in the manner of its use or intended use was capable
of causing death or serious bodily injury. Appellant contends that the catalyst for the
stabbing was that Som pushed her from behind and appellant fell onto the corner of
a table, which caused her to lose a tooth and caused her to briefly black out. 
Appellant asserts that she felt a knife nearby, grabbed it, and swung back. Appellant
testified as follows, in pertinent part: "It's an accident that I get [sic] my hand on the
knife. I don't know anything. I get it. I just try to grab and swing back." Appellant
asserted that she swung back "to defend [her]self," but maintained that it was "just
the accident that I swing [sic]." Appellant testified that she feared that Som was
trying to kill her because Som had, during an argument over a boyfriend two weeks
prior, threatened to kill appellant with a hammer. It is undisputed that Som did not
have a hammer or any other weapon at the time of the incident at issue. Appellant
testified that she did not intentionally stab Som; rather, Som was repeatedly jumping
on appellant and was cut by the knife as Som tried to take it from appellant. Som
testified that she was stabbed a total of 32 times. Som's medical report showed that
Som suffered multiple stab wounds to her neck, hands, and scalp--a large scalp
avulsion caused by multiple small stabs and "deep" stab wounds in neck. 

 The record shows that appellant made a written request "that the charge of the
Court to the jury include an instruction on the application of self-defense (section
9.31, Penal Code)." 

 The version of subsection 9.31(a) that applies to this case provides in pertinent
part as follows:

 (a) Except as provided in subsection (b), a person is justified in using
force against another when and to the degree he reasonably
believes the force is immediately necessary to protect himself
against the other's use or attempted use of unlawful force. (1)

 Subsection (b) provides, in pertinent part, that the use of force against another
is not justified in response to verbal provocation alone or if the actor provoked the
other's use or attempted use of unlawful force, unless the actor abandons the
encounter, or clearly communicates to the other his intent to do so reasonably
believing he cannot safely abandon the encounter and the other nevertheless
continues or attempts to use unlawful force against the actor. (2)

 Here, because appellant used deadly force, there must be some evidence to
satisfy the requisites of Penal Code section 9.32. See Dyson v. State, 672 S.W.2d
460, 463 (Tex. Crim. App. 1984); Guilbeau, 193 S.W.3d at 159. Section 9.32 of the
Texas Penal Code provides, in pertinent part, that "[a] person is justified in using
deadly force against another (1) if he would be justified in using force against another
under Section 9.31; (2) if a reasonable person in the actor's situation would not have
retreated; and (3) when and to the degree he reasonably believes the deadly force is
immediately necessary: (A) to protect himself against the other's use or attempted use
of unlawful deadly force; . . . ." (3) "Deadly force" means force that is intended or
known by the actor to cause, or in the manner of its use or intended use is capable of
causing, death or serious bodily injury." Tex. Pen. Code Ann. § 9.01(3) (Vernon
2003). "Serious bodily injury" means bodily injury that creates a substantial risk of
death or that causes death, serious permanent disfigurement, or protracted loss or
impairment of the function of a bodily member or organ. Id. § 1.07(a)(46). 

 The State contends that there was no evidence that Som used or attempted to
use unlawful deadly force and that appellant was not entitled to a self-defense
instruction under Penal Code section 9.32. The record shows, however, that appellant
requested an instruction under Penal Code section 9.31. Because it is undisputed that
appellant caused serious bodily injury to Som by the use of deadly weapon, appellant
used deadly force. See Tex. Pen. Code Ann. §§ 1.07(a)(46), 9.01(3); Ferrel, 55
S.W.3d at 592. Because appellant used deadly force, a section 9.31 self-defense
instruction is not applicable. See id. Hence, we cannot conclude that the trial court
erred by refusing to give the requested instruction. See id.

 Accordingly, we overrule appellant's first issue.

Motion for New Trial

 In her second issue, appellant contends that the trial court erred by denying her
motion for new trial. 

 A trial court is given wide latitude in determining whether to grant or deny a
motion for new trial. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). We
review the trial court's decision for an abuse of discretion. See Salazar v. State, 38
S.W.3d 141, 148 (Tex. Crim. App. 2001); Escobar v. State, 227 S.W.3d 123, 126
(Tex. App.--Houston [1st Dist.] 2006, pet. ref'd). We do not substitute our judgment
for that of the trial court; we decide only whether the trial court's decision was
arbitrary or unreasonable. Escobar, 227 S.W.3d at 126. A trial court abuses its
discretion only when no reasonable view of the record could support the court's
ruling. Id. The trial court is the sole judge of the credibility of the witnesses at the
hearing on the motion for new trial. Lewis, 911 S.W.2d at 7. 

 Appellant, who is Cambodian, does not speak English and her trial counsel,
Bill F. Leathers, does not speak Cambodian. Appellant moved for a new trial on the
grounds that 

 the verdict is contrary to the law and evidence; the Defendant was
denied counsel in the case as a result of cultural differences and
language barriers; material defense witnesses were kept from testifying
by cultural differences and language barriers that resulted in witnesses
for the defense to be unable to communicate with defense counsel in a
timely manner prior to trial.


(Emphasis added.)

 On appeal, appellant contends that "the issue which presents itself in this case
is whether the trial court abused its discretion in failing to grant the motion for new
trial, upon hearing evidence which established that the Appellant's interpreter had
incompetently translated the proceedings." Appellant contends that she was denied
her Sixth Amendment right to confront witnesses. 

 The record shows that, at the hearing on the motion for new trial, the trial court
permitted appellant to bring testimony of her trial counsel regarding various
translation issues, over the State's objection. 

 Leathers testified that, prior to trial, he had communicated with appellant
through appellant's friend, Nickie Khan. Over a period of a year-and-one-half,
Leathers spoke by telephone with Khan on several occasions and met with appellant
and Khan on several occasions--some of the meetings lasting in excess of two hours. 
Leathers attested that "Khan appeared at every--every time [appellant] came to
Court, up until the time of trial." Leathers informed the trial court of any
communication issues at that point. 

 Leathers testified that, at trial, an appointed interpreter, Vanthang Chi, sat with
appellant and translated English testimony to Cambodian through a microphone and
headset. Chi also translated appellant's Cambodian testimony to English for the jury. 
Leathers testified that

 [s]everal times I cast my eyes over, witnesses testifying, something is
going on. I could see that Mr. Chi was not speaking. I don't know what
Mr. Chi was thinking or what Mr. Chi was doing. All I knew was that
he was not speaking into the microphone that fed the headset for the
defendant. That happened, I don't know, three, four, five times that I
can recall.

Leathers testified that he did not bring any of his concerns to the attention of the trial
court. Leathers testified that appellant's niece sat in the courtroom during the entire
trial and helped Leathers communicate with appellant during breaks and that six
witnesses testified for the defense during the second punishment hearing.

 The record shows that, at the close of evidence in the guilt and innocence
phase, the trial court stated that it had actually watched the interpreter and noted that,
"for purposes of the record, let the record reflect that Mr. Chi, our interpreter, has
been translating simultaneously all the proceedings to the Defendant in this case." 
Appellant did not object or raise any issue. Subsequently, the trial court denied
appellant's motion for new trial. 

 Appellant appears to complain that Chi's translation was likely inaccurate
because he did not appear to be speaking into the microphone during various portions
of unspecified witnesses' testimony. Issues concerning the accuracy of an
interpreter's translation raise fact questions that are properly addressed in the trial
court. Garcia v. State, 887 S.W.2d 846, 875 (Tex. Crim. App. 1994) overruled on
other grounds by Hammock v. State, 46 S.W.3d 889 (Tex. Crim. App. 2001); Kan v.
State, 4 S.W.3d 38, 43 (Tex. App.--San Antonio 1999, pet. ref'd). Such issues are
not reviewable on appeal. Kan, 4 S.W.3d at 43 (citing Garcia, 887 S.W.2d at 875). 
 Accordingly, we overrule appellant's second issue. 

Conclusion

 We affirm the judgment of the trial court.




 Laura Carter Higley

 Justice



Panel consists of Justices Taft, Hanks, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).


 

1. § 
 § 
 
 
 § 
 
 
2. § 
3. § 
 § 
 - 
 
 §