Oscar Eduardo **MENDIOLA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–93–163–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 8, 1995.

Dissenting Opinion Jan. 18, 1996.

Rehearing Overruled July 3, 1996.

Walter J. Pink, Houston, for appellant.

Luis V. Saenz, Brownsville, John A. Olson, Brownsville, for appellee.

Before DORSEY, YAÑEZ and DEVANY[1], JJ.

## OPINION

DORSEY, Justice.

Oscar E. Mendiola appeals his conviction for murder, claiming error in the admission of his confession, use of a non-certified official interpreter, evidentiary rulings, argu- ment by the State, and in the charge to the jury. We affirm.

Mendiola was convicted and sentenced by a jury to twenty years confinement for the murder of Javier Murillo Vidal. Vidal was shot in the jaw and the bullet continued through his neck, severely damaging his spinal cord and causing his death. Mendiola testified at trial and admitted shooting the victim, but claimed self-defense. Mendiola testified that the victim had harassed him over a period of several years before the shooting. On the day of the shooting, Mendiola claimed Vidal had intentionally bumped his car from the rear with his truck and that Vidal's passenger had fired several gun shots. Mendiola stopped his car, got out with a handgun, and walked towards Vidal. Mendiola claimed that Vidal put his hand down to get his gun and that is when appellant fired. He said that he did not aim; he just shot. Appellant contends that he did not intend to shoot Vidal when he got out of the car.

### Challenge to the Voluntariness of Confession

By his first point of error, appellant contends that his confession was not voluntary and should have been suppressed. By his third point of error he urges that the court should have charged the jury as to whether his statement was voluntary. Appellant contends that his confession was coerced because his wife had been arrested and that he would have signed anything to protect her.

The statement of an accused may be used in evidence against him if it appears that it was made freely and voluntarily without compulsion. TEX.CODE CRIM.PROC.ANN. art. 38.21 (Vernon 1979). No written statement made by an accused as a result of a custodial interrogation may be used against him unless certain requirements are met. *See Id.* art. 38.22 § 2. When a question is raised as to the voluntariness of the statement, the court must make an independent inquiry and decision as to that issue outside the presence of the jury. *Id.* § 6. Upon a finding by the

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

judge that the statement was voluntarily given, evidence on the issue may be submitted to the jury for its determination upon instruction. *Id.* §§ 6, 7.

■ The trial court held the required suppression hearing outside the presence of the jury. Various investigating officers testified, as did appellant and his wife. At a suppression hearing the trial court acts as the fact finder and is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 540 (Tex.Crim.App.1990); *Humphrey v. State,* 646 S.W.2d 949, 950 (Tex.Crim.App.1983); *Owens v. State,* 875 S.W.2d 447, 450 (Tex.App.—Corpus Christi 1994, no pet.). We review the evidence at the hearing in the light most favorable to the court's ruling to determine whether the record supports the finding. *Owens,* 875 S.W.2d at 450.

■ Mrs. Mendiola testified that officers came to the house and asked to look at the car in their garage, which matched the description given by a witness at the scene of the shooting. A witness provided the officers with two alternate license plate numbers and told them that the car was a blue Oldsmobile or Chevrolet. Mendiola's car was a blue Oldsmobile Delta 88. Mrs. Mendiola signed a consent form permitting the officers to look at the vehicle. Upon examining the car, officers found a bullet and a quantity of marihuana. They advised her that they were taking the vehicle.

When asked, Mrs. Mendiola told the officers that she had had the car all day and that her husband was not at home. Mrs. Mendiola claims that the officers required her to go to the police station to give a statement about the car. The officers testified that she was told she did not have to go and that she was not under arrest. While at the station, Mrs. Mendiola gave a statement that her husband had the car for half an hour during the day. An arrest warrant was issued for him. Mrs. Mendiola claims that she gave the statement as a result of threats.

She claims the officers intimidated her by telling her that her children would be taken away from her and that she would never see them again. She also testified that she was not given *Miranda* warnings until after she had given a statement, although they were given to her before she signed her statement. She claims she would not have given a statement if the officers had not threatened her or if they had read her the *Miranda* warnings earlier. She testified that she did not believe she was free to go. The officers testified that she was.

Mrs. Mendiola claims that she did not give the officers permission to search her house. The officers testified that she did. She testified that she did not give the officers permission to take a photograph of her husband; the officers testified that she assented. There is no dispute that they took a framed photograph of her husband from the living room of their house and never returned it.

At the hearing on his motion to suppress his confession, appellant testified briefly that he knew his wife was under arrest when he turned himself in, that he was told that the police would not withdraw the charges against her unless he gave a statement, and that his statement to the police was not accurately translated. Several officers controverted that testimony.

As fact finder, the trial court was required to determine voluntariness from the conflicting evidence before him. The record supports his determination that appellant's statement should not be suppressed. Point one is overruled.

■ At trial, appellant testified before the jury that he shot Vidal, and described the circumstances of the shooting. He also testified about giving his written statement to the police. He denied that he was read the *Miranda* warnings in Spanish before he gave the statement, but confirmed that his initials and signature appear on a Spanish language document reciting those rights. He denied the accuracy of portions of the statement that described his actions before and after the shooting,[2] but he confirmed the accuracy

---

**2.** The statement recites that before appellant moved to his current residence, he did not have

problems with Vidal. At trial appellant testified that he had had problems with Vidal for several

of the description of the shooting. He also denied that the statement was read to him in Spanish before he signed it. The appellant testified that the police told him they would press charges against his wife unless he gave them a statement. This is the only evidence supporting appellant's claim of coercion by the police so as to affect the voluntariness of his confession. He did not testify that statements by the police affected his decision to give a statement or that the statement was an involuntary act because of the threat.

Officers Juan Torres and Rey Pineda testified that Torres read Mendiola his rights, that Pineda typed the statement as appellant gave it, and that Detective Sanchez read it back to Mendiola in Spanish. Pineda was present when Torres read appellant the *Miranda* warnings and was present when appellant initialed the warnings. Pineda denied that appellant was threatened.

At the close of evidence and after the charge was prepared, appellant objected on the record to the charge "for failing to have any law concerning the confession."

The charge did not include an instruction as to voluntariness, and appellant complains that error resulted by the omission. For several reasons, we hold that the court did not err in failing to include the instruction. The evidence before the jury was insufficient to raise the issue that the written statement was not a voluntary act of the appellant. *See Butler v. State,* 872 S.W.2d 227, 236 (Tex. Crim.App.1994). When he objected to the charge, counsel failed to adequately inform the court what his objection was, and thus has waived it. Special requested instructions are to be submitted to the court in writing before the court reads its charge to the jury. TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon 1981 and Supp.1995). Appellant did not submit a requested charge to the court. Point of error three is overruled.

## Challenge to the Failure of the Court's Interpreter to Provide a Simultaneous Translation

In point of error two, appellant complains that he was not provided with a certified official interpreter, and that the interpreter he had did not provide an adequate translation. The bailiff served as interpreter for appellant throughout the trial.

A defendant is entitled to an interpreter when a motion is filed by any party or on motion of the court. TEX.CODE CRIM.PROC. ANN. art. 38.30(a) (Vernon Supp.1994). Any person may be called upon to serve as interpreter by the court, under the same rules and penalties as witnesses. *See Id.* The interpreter is not required to be an "official" or "certified" interpreter under the Code, but only to have sufficient skill in translating and be familiar with the use of slang. *See Id.*

On the morning of the second day of trial, the defendant requested a different interpreter, stating "Your Honor, I want to have a full-time interpreter. I want the interpreter to interpret every single word that is said." The court responded,

> That will be denied. *You have an interpreter there sitting next to you during the whole proceedings.... He has an interpreter.... [The bailiff has] been interpreting the whole time.*

(emphasis added). Appellant's counsel then advised the court that

> the defendant is saying he's not understanding what's going on because the interpreter that he has has not been interpreting each and every thing that goes on.... He has requested, as I understand it, an interpreter who will interpret everything so he will know what's going on. I guess it's a word-by-word interpretation that he's asking for....

The following morning, appellant renewed his request for a different interpreter "who can interpret all that is being said." The court denied appellant's requests for a new

---

years before he moved. The statement says that the gun was by the armrest in the car, but at trial appellant said it was under the seat. The statement says that after the shooting he went to Gonzalez Park and called a taxi which drove him to a friend's house. At trial appellant testified

that he drove to the park, left the car and went to a friend's but did not call a taxi. The other discrepancies are about his actions prior to turning himself in and in no way address police conduct.

translator, finding that "the interpreter is bilingual, he is competent and in my experience I think he's able to communicate to the defendant what is happening in this trial." Following trial, appellant entered a motion for new trial based on the court's failure to appoint a different interpreter for appellant. At the hearing on the motion, appellant made a record through appellant's and the interpreter's testimony.[3]

■ It is unclear whether appellant's complaint is to the general competency of the bailiff in serving as an interpreter or to an inaccurate translation of witness testimony. This distinction is significant because while an interpreter's competency is a question of law, the accuracy of an individual translation is a question of fact. *See Garcia v. State*, 887 S.W.2d 862, 875 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). We will therefore examine appellant's complaint under both standards.

■ The competence of an interpreter is for the trial court's determination, and we will reverse such a ruling only for an abuse of discretion. *Montoya v. State*, 811 S.W.2d 671, 673 (Tex.App.—Corpus Christi 1991, no pet.). When appellant complained that he was not getting a "word-by-word" translation, the trial court overruled his request for a new translator, finding that the bailiff was sufficiently competent as a translator to serve appellant's needs during the trial. Appellant's attorney also admitted the bailiff's general competence to serve as an interpreter when he stated

"[w]e really don't have any objection to the officer interpreting, but what we have an objection to is that our client has just informed us that he hasn't been interpreting word for word...."

In addition, during the hearing on appellant's motion for new trial, the bailiff testified that he translated the essence of the testimony accurately, and that he believed that he gave a fair translation, although there were instances when witnesses spoke too fast for him to translate their testimony word for word. There is also evidence in the record that may indicate that the defendant spoke and understood at least some English.[4] Under these facts, we cannot say that the trial court abused its discretion in ruling that the bailiff was competent to serve as appellant's translator.

■ If appellant simply complains generally instead of complaining about a specific translation, he fails to direct the court to any part of the record which shows an alleged error in translation which prevented him from confronting the witnesses against him. *See Id.* (citing *Frescas v. State*, 636 S.W.2d 516, 518 (Tex.App.—El Paso 1982, no pet.)). ("[A]ppellant has presented no specific example of misunderstanding.") Appellant does not complain of any such specific errors, and none can be found in the record. The record reveals no objection or request on appellant's part to have any witness slow down or to have an opportunity to re-examine a witness because he did not follow the testimony. At no time did appellant ever specify what witnesses or portions of the trial he did not understand.

**3.** At the hearing on the Motion for New Trial, the bailiff testified that his name was Roy Garcia, that he was the bailiff, and that he recalled interpreting for appellant. He testified that he translated from voir dire to the end of trial to the best of his ability, but not always word for word, and that there were occasions when appellant told him he didn't understand some things. Garcia also testified that he was fluent in English and Spanish; that although there were times when he did not translate word for word, that he translated the essence accurately. The problem was that some of the witnesses spoke very quickly and he couldn't keep up a word-for-word translation. The bailiff believed that he gave a fair translation. When appellant complained that he didn't understand, Garcia would clarify as soon as he could catch up. Mendiola testified that there were some things he didn't understand but did not specify what those things were.

**4.** Whereas appellant asserts in his brief that he "spoke Spanish only," the record attributes the following statement to the defendant himself: "Your Honor, I want to have a full-time interpreter. I want the interpreter to interpret every single word that is said." The record does not show whether this statement was made by the defendant himself or through his interpreter, but other places in the record where the defendant himself speaks, the record shows that he spoke through the interpreter.

■ A defendant is entitled to a simultaneous translation of the proceedings. *See Baltierra v. State,* 586 S.W.2d 553, 559 (Tex. Crim.App.1979). However, under these circumstances, where it appears that simultaneous translation occurred much of the time and failed to occur only when the interpreter was occasionally unable to keep up, and where appellant made no specific request when translation broke down to have the witness speak more slowly or to pause to allow the translator to catch up, we find that no error was preserved. In circumstances like those presented to us today, we are unable to determine the validity of appellant's complaint because we are provided with only a general objection that does not illuminate the extent of the problem or demonstrate any harm. There is no evidence that the bailiff was not generally competent to interpret and no showing in the record that any error in translation or any misunderstanding interfered with appellant's ability to confront witnesses. Point two is overruled.

### Evidentiary Rulings

■ During the punishment phase, appellant objected to the testimony of Vidal's family members. The family uniformly depicted Vidal as a good man, married a long time to his childhood sweetheart, and generally nonviolent. During the guilt/innocence phase, appellant claimed that he shot Vidal in self-defense after years of harassment and threats. Appellant objected to the family's testimony on relevancy grounds and argued that the evidence was unfairly prejudicial. His objections were overruled.

■ During punishment, evidence may be offered by the State and the Defendant "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried...." TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon Supp.1994). We have previously held that

> [t]he test for relevancy of the evidence is much broader at the punishment stage, the

purpose being to allow the factfinder as much useful information as possible in deciding the appropriate punishment for the individual defendant.

*Bowser v. State,* 816 S.W.2d 518, 521 (Tex. App.—Corpus Christi 1991, no pet.) (reversing punishment for the failure of the court to issue a writ of attachment for a defense witness). "[A]dmissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevancy." *Miller–El v. State,* 782 S.W.2d 892, 895 (Tex.Crim.App.1990). Evidence admitted to inform the punishment decision is not a question of logical relevance since there are no distinct facts of consequence to be determined. The issue is one of policy. *Id.* at 896.

Our courts have wrestled with the issue of victim impact testimony in both capital and non-capital cases and whether the evidence has any possible relevance to the issues to be decided or whether it serves only to inflame the jury and influence the jury to impose a harsher punishment than it otherwise would impose. *Cf. Armstrong v. State,* 718 S.W.2d 686, 695 (Tex.Crim.App.1985) (reversing punishment in capital murder trial when during punishment phase wife of victim testified that her husband was peaceable, a loving husband and good father, and they were married 22 years); *Miller–El,* 782 S.W.2d at 895–96 (non-capital attempted murder case holding that testimony during punishment phase regarding victim's permanent paralysis and future hardships admissible as a "circumstance of the offense"); *see also Stavinoha v. State,* 808 S.W.2d 76, 79 (Tex.Crim.App.1991).

The United States Supreme Court has overruled prior cases which had adopted a *per se* rule that victim impact evidence violated a defendant's Eighth Amendment rights. *See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (overruling *South Carolina v. Gathers,* 490 U.S. 805, 810, 109 S.Ct. 2207, 2210, 104 L.Ed.2d 876 (1989) and *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)). In *Payne,* the Court permitted such testimony, holding that

> if the State chooses to permit the admission of victim impact evidence and prosecu-

torial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. *Payne,* 501 U.S. at 827, 111 S.Ct. at 2609. In its reasoning, the Court considered that the defendant will be presenting evidence to mitigate whatever punishment the jury may impose. The State has a legitimate interest in counteracting that evidence by reminding the jury that just as the defendant should be considered as an individual, so should the victim. *Id.* at 824–26, 111 S.Ct. at 2608.

This is not a capital case. Our courts permit such testimony under the broad discretion granted by article 37.07 § 3(a). Since retribution is a permissible part of the jury's decision on punishment, the trial judge did not err in permitting the testimony.[5] Point four is overruled.

### Improper Argument

Appellant claims that the State was guilty of misconduct and improper argument during both phases of the trial. During the guilt phase, appellant contends that the State continually ignored the trial court's rulings resulting in an unfair trial and cumulative error as well as various portions of the State's closing argument. During punishment, appellant complains of the State's argument that the town is dangerous and the jury should send a message, that the defendant should not receive probation, and that granting probation would waste the cost of the trial.

■■■■■■ Proper jury argument may include: 1) a summary of the evidence; 2) reasonable deductions from the evidence; 3) response to argument of opposing counsel; and 4) a plea for law enforcement. *Calderon v. State,* 847 S.W.2d 377, 382–83 (Tex.App.— El Paso 1993, no pet.) (citing *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim.App.1990)).

The arguments appellant objected to during punishment can reasonably be considered arguments for law enforcement.

■■■ Appellant complains of every instance in which the court overruled his voluminous objections during the State's closing argument. The court, even when it overruled some objections to arguing outside the record, instructed the jury that they should remember the testimony. The court also sustained some of counsel's objections and instructed the jury to disregard the State's argument. We review the court's rulings for an abuse of discretion. During closing, it is apparent from the record that both counsel for the State and the defense were emotional. It is also apparent that the court was attempting to balance the latitude generally allowed in closing argument against the need to control the argument and keep it within permissible bounds to ensure a fair trial. It appears that he did so successfully. We find no error in the court's rulings during argument either in the guilt or punishment stage. Point five is overruled.

### Extraneous Offenses

By point six, appellant urges reversal because of the State's mention of marihuana found in appellant's vehicle during the initial search of the car. Appellant had filed a motion in limine to preclude any mention of the marihuana found which the court granted. The State was instructed to tell the officers who were to testify not to mention the marihuana. During the prosecutor's questioning of Officer Pineda regarding the circumstances around the search of the car, the prosecutor asked, "And what did you find in the vehicle?" Pineda answered, "We found some marihuana, some—" Appellant objected, the court sustained, and instructed the jury to disregard the last remark. Appellant requested a mistrial which was denied. Immediately after and outside the presence of the jury, the prosecutor indicated that she had instructed the officers not to

---

5. In his brief, appellant argues that part of the prejudice occurred when, during the family members' testimony, five witnesses broke down and cried and other members of the audience visibly sobbed. That information is not reflected in the record and we do not rule on that portion of his argument. Moreover, at one point, appellant requested that all the family members remain in the courtroom rather than going out into the hall.

mention the marihuana, that she was only trying to elicit the information that the officers found a bullet in the car. Later during Mrs. Mendiola's testimony, the State asked her whether she smoked marihuana, and appellant objected. The objection was sustained and the jury was instructed to disregard. Immediately after, the State asked whether appellant smoked marihuana, to which appellant again objected. The objection was again sustained and the jury instructed to disregard. Both times, appellant requested a mistrial which was denied. Additionally during Mrs. Mendiola's testimony on the issue of consent to search the house, the prosecutor questioned her about some scales the officers found behind the dresser. Appellant objected and was overruled. He objected again on a different ground, was sustained, and the jury was instructed to disregard. Appellant's request for a mistrial was denied.

Courts seldom reverse a conviction because an improper question is asked; the general rule is that error in asking an improper question or in admitting improper testimony is cured or made harmless by a withdrawal of the evidence or an instruction to disregard. This rule controls except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression created in their minds. *Boyde v. State,* 513 S.W.2d 588, 590 (Tex.Crim.App.1974). This rule applies to evidence about extraneous offenses. *Campos v. State,* 589 S.W.2d 424, 428 (Tex.Crim.App. 1979). Although we do not condone the State's questions of appellant and his wife regarding marihuana use, we do not find that they rise to the level that requires reversal of the conviction. We believe the general rule applies here and find the facts of *Boyde* relied on by appellant to be distinguishable. *See Angel v. State,* 694 S.W.2d 164, 173 (Tex. App.—Houston [14th Dist.] 1985), *aff'd on other grounds,* 740 S.W.2d 727 (Tex.Crim. App.1987) (following the general rule). Point six is overruled.

The JUDGMENT is AFFIRMED.

Dissenting opinion by YAÑEZ, J.

YAÑEZ, Justice, dissenting.

The right of an accused to have trial proceedings interpreted in a language he can understand is a part of the constitutional right of confrontation. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *Baltierra v. State,* 586 S.W.2d 553, 558 (Tex.Crim.App. 1979).

By point of error two, appellant complains that he was denied a certified interpreter and he was denied a "word-by-word" translation during his trial. Appellant complains that his interpreter provided him inadequate translation. In this case, the trial court appointed the bailiff as appellant's interpreter. Apparently, the regular interpreter was unavailable. Initially, the parties agreed that the bailiff was competent. Unfortunately, during the course of trial appellant realized that he did not understand all of the testimony. He, therefore, objected that the bailiff was not providing an adequate translation, and he asked the trial court to put the bailiff on the stand for questioning.

There is no indication in the record, however, that the trial court allowed appellant to question the bailiff or have a hearing on the interpreter's adequacy. On two separate occasions, appellant again complained about the interpreter's adequacy and asked for another to be appointed. The trial court denied the requests. The trial court stated on the record that the bailiff was bilingual and "he is competent and in my experience I think he's able to communicate to the defendant what is happening in this trial." The trial court, however, made this determination without hearing from appellant or the bailiff and without an inquiry of any kind.

Questions regarding the appointment and performance of translators are legal questions concerning rights guaranteed by the United States and Texas Constitutions—rights ensuring that an individual defendant has a fair trial. *Garcia v. State,* 887 S.W.2d 862, 875 (Tex.Crim.App.1994). As issues of law, these questions are reviewable by appellate courts. *Id.* The Code of Criminal Procedure provides for the appointment of interpreters. TEX.CODE CRIM.PROC.ANN. art. 38.30

(Vernon Supp.1995). Article 38.30 also provides that

> [i]n the event that the only available interpreter is not considered to possess adequate interpreting skills for the particular situation or the interpreter is not familiar with the use of slang, the person charged or witness may be permitted by the court to nominate another person to act as intermediary between himself and the appointed interpreter during the proceedings.

*Id.* The statute does not, however, provide guidance as to how the trial court should determine competency or adequacy. It also does not provide a mechanism for removing an unacceptable translator. Yet, we must read the statutory provisions together with a defendant's constitutional right to confrontation. Therefore, we must review whether appellant's translator was adequate and whether appellant was properly afforded his right to confrontation.

We have previously held that the trial court has no duty to interrogate the interpreter to determine his qualifications. *Montoya v. State,* 811 S.W.2d 671, 673 (Tex. App.—Corpus Christi 1991, no pet.). If there is a question concerning a translator's qualifications, a defendant should object and make a record. *Id.* Here, appellant objected no fewer than three times, but was denied the opportunity to present his claim or make a record. We have also held that the question of a translator's competence is a question for the court, and will be reversed only for an abuse of discretion. *Montoya,* 811 S.W.2d at 673.

Although during trial appellant was unable to question the bailiff about the translations, appellant did question him during his new trial hearing. Concerning his translations to appellant, the bailiff testified that "I tried my best, not word for word, but I tried my best for him to understand." The bailiff also stated that there were times when appellant told him that he did not understand, but that he translated the "essence" of the testimony. The bailiff also conceded that sometimes his translations were "not accurate," but that he would "summarize" what the witnesses were saying. The bailiff stated that this occurred because the witnesses spoke too fast. Appellant also testified that he did not always understand what was being translated.

The majority agrees that criminal defendants are entitled to simultaneous translation of court proceedings, but finds that no error was preserved in this case. I disagree. Appellant clearly objected to the translator's inadequacy and continued mistranslation. When a defendant objects to the adequacy of his interpreter, it is the duty of the court to make an inquiry into the difficulty. It is incumbent on the trial court to make a determination at the time of objection because of the right to confrontation. If it is later discovered that translation was inadequate or the translator incompetent, a defendant's right to confrontation would have been diminished.

If the trial court has not yet made an initial determination of the translator's qualifications, he should do so at the time of defendant's objection. Upon this adequacy objection, an independent determination should be made concerning the translator's competence. *See Montoya,* 811 S.W.2d at 673. The trial court should consider the interpreter's knowledge, skill, experience, training, or education in language and translation before deciding whether the interpreter is competent. *See* Tex.R.Crim.Evid. 702; *cf.* Fed.R.Evid. 604 and 701 (court interpreter subject to qualification as an expert); 28 U.S.C.A. § 1827 (1994) (establishing qualifications and prescriptions for certified interpreters).

After determining that the interpreter is competent, the trial court must then make an inquiry into appellant's adequacy objection. Only after a hearing on appellant's objection should the trial court make a ruling; it is an abuse of discretion not to make such an inquiry. After hearing testimony or other evidence on appellant's objection, the trial court should either appoint another translator or permit the defendant to nominate another person to act as intermediary between himself and the appointed interpreter during the proceedings.

In this case, appellant was granted neither option. Further, he was denied the opportunity to present his complaint to the trial

court. As previously discussed, the bailiff stated that he summarized and translated the testimony in its "essence." The constitutional right to confrontation requires more.

An interpreter should be totally impersonal. That is, his role is merely that of a conduit from the primary witness to the trier of fact. As such, he should not aid or prompt the primary witness in any way, nor should he merely render a "summary" of what the primary witness has stated. Instead, as far as possible, he should translate word for word exactly what the primary witness has said. When an interpreter is employed, he must fully, completely, and accurately translate questions and answers.

75 AM.JUR.2D *Trial* § 234 (1991). Likewise, a criminal defendant is entitled to an adequate word for word translation.

This case presents a serious constitutional concern. Although appellant complained of his inadequate interpreter and offered to present evidence, no independent adequacy determination was conducted. Although appellant asked for another interpreter, none was given and no alternative was offered. Appellant was not given a word for word translation of his trial nor was he given another interpreter or an intermediary; he merely heard the "essence" of trial testimony. These circumstances did not give appellant the opportunity to fully know or understand what was happening at his trial. Review of such facts is limited because neither the court nor appellant can know what testimony was missed if the translator only summarizes the testimony. A defendant is unquestionably harmed when he is not allowed to show that his court appointed interpreter is inadequate. A defendant, furthermore, should not be required to continue with an interpreter who consistently mistranslates a witness' statements. *See Garcia*, 887 S.W.2d at 875 n. 2.

A defendant who is subjected to ineffective translation must "guess" at what is going on around him. An atmosphere is created where the defendant is hindered in effectively assisting his own defense, a milieu worthy

of Kafka but unworthy of this court's imprimatur:

> Naturally, therefore, the records of the case, . . . were inaccessible to the accused and his counsel, . . . consequently one did not know with any precision, what charges to meet; . . . accordingly it could be only by *pure chance* that it contained really relevant matter. . . . [E]vidence . . . could be *guessed* at from the interrogations. In such circumstances the Defense was naturally in a very ticklish and difficult position.

FRANZ KAFKA, THE TRIAL, 144 (Willa and Edwin Muir, trans., Random House 1956) (1937) (emphasis added).

> *El Hombre Invisible*
>
> *ésta es la palabra,*
> *yo no soy superior*
> *a mi hermano*
> *pero sonrío,*
> *porque voy por las calles*
> *y sólo yo no existo,*
> *la vida corre*
> *como todos los ríos,*
> *yo soy el único*
> *invisible.*

PABLO NERUDA, ODAS ELEMANTALES, 8 (1980).

Defendants are entitled to competent, adequate translators during their trials. Appellant was denied his right to confrontation in this case. I would, therefore, reverse the trial court judgment and remand for a new trial.