COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JOSE LUIS TOLEDO,                                          )

                                                                              )              
No.  08-03-00020-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
204th District Court

THE STATE OF TEXAS,                                     )

                                                                              )             
of Dallas County, Texas

Appellee.                           )

                                                                              )              
(TC# F-0201508-KQ)

                                                                              )

 

 

O
P I N I O N

 

Appellant was
convicted by a jury for the murder of Daniel DeLeon.  The jury assessed punishment at 22 years= imprisonment.  In Issue One, Appellant asserts that the
trial court erred in excluding evidence of the victim=s
violent past and gang membership in prison. 
In Issue Two, he contends that the trial court erred during punishment
by permitting the State to present irrelevant details of a prior offense by
testimony and gruesome photographs.  We
affirm.

FACTUAL
SUMMARY








On the evening of
November 25, 2001, Johnny Monsivais held a party at his home at which both
Appellant and Daniel DeLeon were present. 
At some point during the party, DeLeon and Appellant began to argue.  Appellant testified that DeLeon was being
verbally aggressive towards him during the party, swearing at him, and calling
him names.  He also stated that DeLeon,
Johnny, and several other people at the party were snorting cocaine.  Around two in the morning, the argument escalated
into a fistfight in the front yard.  The
fight lasted for approximately ten minutes, during which time DeLeon pushed
Appellant to the ground and continued to hit him even after Appellant told him
to stop.  Following the fight, everyone
returned to the house and DeLeon fell asleep on the sofa.  

Testimony differed
as to Appellant=s
demeanor following the first fight. 
Johnny Monsivais testified that Appellant was angry that he lost, and
made it clear that he wanted a rematch. 
Miguel Rodriguez, another guest at the party, insisted that Appellant
never made any threats to DeLeon or said he wanted a rematch.  Later that night, DeLeon=s brother Francisco arrived at Johnny=s house to take his brother home.  Francisco guided DeLeon out the front door
towards the car, but DeLeon continued to swear at Appellant and eventually
broke free.  He ran toward Appellant who
was standing on the porch behind two of his friends.  As DeLeon was coming towards him, Appellant
reached between the two people in front of him and stabbed DeLeon in the
chest.  DeLeon did not have a weapon when
he approached Appellant.  At that point,
Francisco retrieved a knife from his friend=s
truck and went after Appellant who ran away from the house and did not
return.  

The stab wound was
five and one-half inches deep, going through two of DeLeon=s ribs and entering his heart.  DeLeon died as a result of these
injuries.  Toxicology tests revealed that
DeLeon had consumed both alcohol and cocaine the night of his death.

Exclusion of Evidence








Appellant argues
in his first issue that evidence of DeLeon=s
violent past should have been admitted to demonstrate that he was the aggressor
in the fight.  We review the trial court=s decision to exclude evidence under an
abuse of discretion standard.  Burden
v. State, 55 S.W.3d 608, 615 (Tex.Crim.App. 2001).  The trial court=s
ruling should not be reversed unless it falls outside the zone of reasonable
disagreement.  Id.

The State argues
that Appellant failed to preserve for review any argument concerning the
exclusion of the victim=s
prior convictions or gang membership. 
With respect to DeLeon=s
prior convictions, the State asserts that Appellant=s
legal arguments at trial do not comport with his arguments on appeal.  Specifically, the State argues that during
trial, Appellant argued that evidence of DeLeon=s
prior convictions was admissible to demonstrate who the first aggressor was in
the fight in that it would show Appellant=s
state of mind, while on appeal, Appellant contends it should have been admitted
to show DeLeon=s
state of mind.  We disagree that
Appellant attempts to introduce a new legal theory on appeal since his brief
merely recounts the arguments made at trial and offers case law to support
them.  Additionally, the State argues
that Appellant failed to offer evidence of DeLeon=s
prior criminal record or gang affiliation. 
We note, however, that Appellant=s
counsel did question Johnny Monsivais about Appellant=s
reputation and prior convictions, and requested that the testimony be entered
as a Bill of Exceptions.  The trial court
overruled his request, but we decline to hold that Appellant did not preserve
his complaint by failing to offer that evidence when this evidence was clearly
offered into the record in order to preserve this very issue on appeal.  Therefore, we will address the merits of
Appellant=s
argument.








A defendant in a
homicide prosecution who raises the issue of self-defense may introduce
evidence of the deceased=s
violent character.  Tex.R.Evid. 404(a)(2); Tate v. State,
981 S.W.2d 189, 192-93 (Tex.Crim.App. 1998). 
The defendant may offer opinion or reputation testimony to prove the
deceased acted in conformity with his violent nature.  Tex.R.Evid.
404(a)(2) and 405(a); Torres v. State, 71 S.W.3d 758, 760 (Tex.Crim.App.
2002).  However, in general, evidence of
a person=s
character may not be used to prove that he behaved in a particular way at a
given time.  Tate, 981 S.W.2d at
192.  Specific, violent acts of
misconduct may be admitted to show the reasonableness of the defendant=s fear of danger, or to show that the
deceased was the first aggressor.  Torres,
71 S.W.3d at 761.  However, such evidence
is admissible only if it has relevance apart from its tendency to prove he
acted in conformity with his character, and in so far as it tends to explain
the deceased=s outward
aggressive conduct at the time of the killing. 
Tate, 981 S.W.2d at 193; Torres, 71 S.W.3d at 762.  In the context of proving the deceased was
the first aggressor, the Court of Criminal Appeals has held that specific,
violent acts are relevant to the extent that they demonstrate the deceased=s intent, motive, or state of
mind.  Torres, 71 S.W.3d at
761.  Here, Appellant asserts that
evidence of DeLeon=s robbery
and aggravated assault convictions, and his membership in a violent prison gang
should have been admitted to show that he was the first aggressor in the fight,
and to provide insight into Appellant=s
state of mind.  We disagree.








We think that
Appellant has confused the standards for admitting evidence of violence for the
purposes of demonstrating that DeLeon was the first aggressor with standards
for admitting general character evidence. 
He cites a case that allows generally for the admission of both general
reputation evidence, and evidence of specific violent acts without
distinguishing between the purposes for which each can be used.  See Lowe v. State, 612 S.W.2d 579
(Tex.Crim.App. 1981).  While Texas courts
do allow a defendant to offer reputation testimony to show the deceased acted
in conformity with his violent nature, specific acts of violence can only be
used to prove who the first aggressor was if they are relevant for some other
purpose.  Torres, 71 S.W.3d at
760-61.  The evidence disputed by
Appellant has no value other than to show that DeLeon acted in conformity with
his character.

During pretrial
proceedings, Appellant=s
counsel contested the State=s
Motion in Limine, asking that no mention be made of the victim=s criminal record or prior
arrests.  His counsel argued that DeLeon
had been convicted of robbery and aggravated assault with a deadly weapon involving
a baseball bat, and that this evidence was relevant to who the aggressor was in
this offense.  Appellant=s counsel questioned Johnny Monsivais
in sub rosa hearings about whether he heard Appellant and DeLeon arguing
about DeLeon=s prison
gang, Raza Unida, or prison.  Later, he
asked Monsivais about DeLeon=s
reputation as a peaceful and law abiding member of society.

All of the
evidence cited above speaks only to DeLeon=s
violent character.  In attempting to
admit it, Appellant was implying that Daniel DeLeon was a violent person with a
history of assaultive behavior that had placed him in prison previously.  The case law is clear, however, that specific
acts of violence cannot be admitted merely to confirm a victim=s violent nature.  Tate, 981 S.W.2d at 193.  Rather, there must be some kind of connection
between the previous violent acts and the violent act in question.  For example, the Tate Court held that
testimony that the victim had previously threatened the defendant, even to a
third person, was admissible because it shed light upon the victim=s state of mind on the night of the
murder.  Tate, 981 S.W.2d at 193.








In Torres,
testimony that several nights before the murder, the victim had threatened to
kill his girlfriend=s aunt
and her children if she did not tell him where his girlfriend was staying was
admissible because it showed a mindset of violence against any person who might
stand between him and his girlfriend (as the defendant did on the night of his
murder).  Torres, 71 S.W.3d at
761-62.  In other words, the previous
violent acts must implicate the defendant in some way, or provide insight into
the victim=s
motivation or state of mind related to the confrontation with the defendant.  Tate, 981 S.W.2d at 193.  

In the instant
case, Appellant merely tried to submit evidence of DeLeon=s violent character.  He failed to provide any evidence that
connected DeLeon=s
previous violent acts with the events leading up to his murder or any evidence
that shed light on DeLeon=s
state of mind or intention in inciting the altercation with Appellant.  As a result, we find that the trial court did
not abuse its discretion in refusing to admit such evidence.  Issue One is overruled.

Evidence of Prior Offenses for Punishment

Appellant asserts
in his second issue that the trial court erred during the punishment phase by
allowing the State to admit detailed evidence and explicit photographs of a
prior offense.  In April 1995, Wilton
Grady Beggs was robbed and shot in the doorway of his apartment.  Appellant was convicted of that robbery in
December 1995.  His assertion that this
evidence should not have been admitted is based on several legal grounds,
specifically that details of a prior offense are inadmissible under Article
37.07, section 3(a) of the Texas Code of Criminal Procedure, that the probative
value of these specific details was far outweighed by their prejudicial
effect.  








Appellant relies
on Williams v. State, 906 S.W.2d 58, 63 (Tex.App.--Tyler 1995, pet. ref=d), which states that Section 3(a) of
Article 37.07 of the Texas Code of Criminal Procedure prevents the State from
eliciting details of an offense for which a defendant has been previously
convicted, even when the conviction itself is admissible.  Id. at 63.  However, this case no longer reflects the
current interpretation of Article 37.07. 
In 1993, Section 3(a) was amended to provide for a much wider range of
evidence to be admissible for the purposes of assigning punishment.[1]   The law now specifically allows the details
of prior offenses, both those resulting in criminal conviction and those
defined only as Abad acts,@ to be admitted during punishment and
provides the trial court with broad discretion in admitting whatever evidence
it deems relevant to sentencing.  Tex.Code Crim.Proc.Ann.
art. 37.07, '
3(a)(1)(Vernon Supp. 2004-05); Haney v. State, 951 S.W.2d 551, 554
(Tex.App.--Waco 1997, no pet.).  Since
the offense in Williams was committed in January 1992, the new version
of the law did not apply.  Williams,
906 S.W.2d at 60.  However, since
Appellant in the instant case committed the charged offense on November 25,
2001, the new version of Article 37.07, '
3(a), now codified as '
3(a)(1), controls and Williams is inapplicable.








Appellant next
asserts that though there are some cases that permit detailed evidence of prior
offenses to be admitted, even these cases would not permit details from a case
included in the indictment for enhancement purposes to be admitted.  He points to Haney to support this
assertion.  The issue in Haney was
whether, under the 1993 version of Section 3(a), the State could admit details
of a prior extraneous offense resulting in conviction.  Haney, 951 S.W.2d at 554.  The Court noted that the text of former
Section 3(a) specifically allows admitting evidence of a defendant=s bad acts Aregardless
of whether he has previously been charged with or finally convicted of the
crime or act.@  See Tex.Code
Crim.Proc.Ann. art. 37.07, '
3(a)(1); Haney, 951 S.W.2d at 554. 
The Court found no reason why a fact finder should be allowed to
consider the details of a bad act, which was not a criminal offense, but not
the details of an event that resulted in a criminal conviction, to determine a
proper sentence.  Haney, 951
S.W.2d at 555.  Haney stands for
the proposition, therefore, that details surrounding a prior extraneous
conviction are admissible because they provide useful information to assist the
fact finder in tailoring appropriate punishment for a given defendant.  See Id. at 555.

The Haney
Court, however, stated in a footnote that the decision applied only to
extraneous offenses and did not reach the question of whether the State can go
into the details of a prior conviction which is not extraneous, Ai.e. one that is charged in the
indictment for enhancement purposes.@  Haney, 951 S.W.2d at 555 n.4.  Appellant takes this as definitive evidence
that details of such convictions are inadmissible.  We are not convinced.








We find Appellant=s argument to be tenuous for a number
of reasons.  At least one other appellate
court has already allowed details of prior convictions pled in the indictment
to be admitted.  Davis v. State,
68 S.W.3d 273 (Tex.App.--Dallas 2002, pet. ref=d).  Current case law provides no basis for
setting apart prior convictions used for enhancement purposes with regard to
allowing details of prior offenses.  The Haney
Court stated that allowing the State to present evidence about extraneous
crimes or bad acts allows jurors to learn Aas
much useful information as possible in deciding the appropriate punishment for
the individual defendant.@  Haney, 951 S.W.2d at 555, quoting
Mendiola v. State, 924 S.W.2d 157, 163 (Tex.App.--Corpus Christi 1995,
pet. ref=d,
untimely filed).  The Dallas Court of
Appeals upheld the admission of details of a prior murder conviction used for
enhancement purposes in Davis because it was Aextremely
instructive concerning appellant=s
character@ and it
helped to Aaid the
trial court in setting punishment.@  Davis, 68 S.W.3d at 283.  We can determine no reason why details of
prior convictions not charged in the indictment would be admissible for
the reasons stated above, while details of offenses included in the indictment
for enhancement purposes would not be valuable in achieving the same goals.

Most importantly,
even if such prior convictions are not extraneous, thereby not falling into the
Haney analysis, the statute allows for their admittance in other
ways.  Section 3(a)(1) allows for the
admission of evidence Aas
to any matter the court deems relevant to sentencing, including but not limited
to the prior criminal record of the defendant . . . any other evidence of an
extraneous crime or bad act . . . regardless of whether he has previously been
charged with or finally convicted of the crime or act.@  See Tex.Code
Crim.Proc.Ann. art. 37.07, '
3(a)(1). Discussing the 1993 Amendment, the Texas Court of Criminal Appeals
stated, AThis is a
clear expression of legislative intent that the fact finder have, in addition
to judicial records, any other evidence of a defendant=s
crimes, regardless of whether or not the defendant has been convicted.@ 
Davis v. State, 968 S.W.2d 368, 372 (Tex.Crim.App. 1998).  Whether prior convictions are admitted as
part of a defendant=s prior
criminal record, or simply as Abad
acts@ with
which they have been convicted, the statute and the case law interpreting it
allows for detailed evidence to be provided to the fact finder in tailoring an
appropriate sentence.  As a result, we
find that admitting evidence of Appellant=s
prior robbery conviction cannot constitute error on the basis that details of
prior convictions alleged in the indictment are inadmissible.








Appellant also
contends that admission of photographs of the crime scene from his previous
robbery conviction were inadmissible in that their probative value is far
outweighed by their prejudicial effect. 
Rule 403 of the Texas Rules of Evidence states in part that evidence,
although relevant, may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury.  Tex.R.Evid. 403.  We review a trial court=s Rule 403 decision for an abuse of
discretion.  See Salazar v. State,
38 S.W.3d 141, 151 (Tex.Crim.App. 2001); Sonnier v. State, 913 S.W.2d
511, 518 (Tex.Crim.App. 1995).

Once a defendant
objects to photographic evidence on the basis of unfair prejudice, the trial
court must balance the probative value of the photographs against their
potential for unfair prejudice.  Ladd
v. State, 3 S.W.3d 547, 568 (Tex.Crim.App. 1999).  In doing so, the trial court should consider
the host of factors affecting probativeness including the weight of the
evidence and the degree to which its proponent might be disadvantaged without
it, and balance those factors against the tendency, if any, that the
photographs have to encourage resolution of material issues on an inappropriate
emotional basis.  Id.








In the instant
case, the stated purpose of the State in introducing the photographs was to
illustrate crimes the defendant had committed, and to demonstrate to the jury
that Athe
defendant was a participant in a gruesome crime.@  The State further elucidated its purpose in
its appellate brief stating that the photographs were introduced not to inflame
the jurors, but to Aaid them
in tailoring an appropriate sentence for the present offense by showing the
violent nature of appellant=s
prior criminal acts.@  Appellant asserts that the photographs were
unnecessary to introduce the fact, and even the details, of Appellant=s previous robbery, and that they
depicted a murder with which Appellant was neither charged nor convicted.  We acknowledge that Appellant=s arguments have some merit, and that
the photos do have prejudicial qualities. 
However, we do not believe that the probative value of these photos is
substantially outweighed by any prejudice they may cause. 








We agree with the
State that while Appellant did not kill Mr. Beggs himself, he was an active and
willing participant in the robbery that led to Mr. Beggs=
murder.  The robbery conviction was
introduced for the purpose of tailoring a sentence appropriate to account for
Appellant=s
criminal record, and as such, the details of his prior offenses are
relevant.  Evidence is considered
relevant if it has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence,@
and it is presumed that relevant evidence is more probative than
prejudicial.  Tex.R.Evid. 401; Todd v. State, 911 S.W.2d 807, 819
(Tex.App.--El Paso 1995, no pet.); Laca v. State, 893 S.W.2d 171, 180
(Tex.App.--El Paso 1995, pet. ref=d).  The photographs at issue are gruesome in that
they depict a violent crime scene, but they depict nothing more than the
reality of the brutal crime committed and can therefore not be excluded on
gruesomeness alone.  Chamberlain v.
State, 998 S.W.2d 230, 237 (Tex.Crim.App. 1999).  Further, unfair prejudice does not mean
simply that the evidence injures the opponent=s
case.  Cohn v. State, 849 S.W.2d
817, 820 (Tex.Crim.App. 1993).  Instead,
it refers to the tendency the evidence has to encourage resolution of material
issues on an inappropriate emotional basis. 
Ladd, 3 S.W.3d at 568. 
These photographs are not Aso
horrifying or appalling that a juror of normal sensitivity would necessarily
encounter difficulty rationally deciding the critical issues of this case after
viewing them.@  Fuller v. State, 829 S.W.2d 191, 206
(Tex.Crim.App. 1992).  As such, we find
that the trial court reasonably could have concluded that the probative value
of the photographs was not substantially outweighed by the danger of unfair
prejudice.  

Finally, even if
Appellant could have made a successful argument that the danger of unfair
prejudice did outweigh their probative value, he would fail in a harm
analysis.  The possible range of
confinement for Appellant=s
crime was fifteen years to life in prison, and the State asked for a life
sentence.  The fact that the jury
prescribed only twenty-two years when given the option to prescribe a life
sentence indicates that any effect caused by the photographs was slight if
present at all.  This, combined with the
fact that the verdict form explicitly shows the jurors chose to assign
twenty-two years=
confinement because Daniel DeLeon was 

twenty-two years old when he died,
contradicts the assertion that the explicit photos of the prior crime
influenced the jury.  

Given that the
changes in Article 37.07 no longer forbid the admission of the underlying facts
of a defendant=s prior
offenses during punishment, and that the photos of Mr. Bregg=s murder were not harmfully
prejudicial, we find that the trial court did not abuse its discretion in
admitting testimony and photographs of the offense.  Issue Two is overruled.

The trial court=s judgment is affirmed.

 

 

October 28, 2004

DAVID WELLINGTON CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In 1993, former Section 3(a) was amended to provide for a much wider range of
evidence to be admissible for the purposes of assigning punishment.  See Act of May 29, 1993, 73rd Leg.,
R.S., ch. 900, ' 5.05,
1993 Tex.Gen.Laws 3759 (later
amended by Act of May 17, 2001, 77th Leg., R.S., ch. 585, ' 1, 2001 Tex.Gen.Laws 1118, now codified as Tex.Code Crim.Proc.Ann. art. 37.07, '
3(a)(1)(Vernon Supp. 2004-05); see also Edward L. Wilkinson, Punishment Evidence:  Grunsfeld Ten Years Later, 35 St. Mary=s L.J. 603, 621-22 (2004) (discussing
the broad language which widened the scope of admissible evidence relevant to
sentencing).