

## NUMBER 13-09-00058-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

BRIAN SKOLNIK,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

---

### On appeal from the 36th District Court
### of San Patricio County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Brian Skolnik appeals from his conviction for murder.  *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003).  At the close of the State's evidence, Skolnik pleaded guilty and the jury sentenced him to forty years' imprisonment and assessed a $10,000 fine.  By two issues, Skolnik argues:  (1) the trial court erred when it admitted evidence of extraneous misconduct because the probative value of the evidence was

substantially outweighed by unfair prejudice; and (2) the trial court erred when it instructed the jury on "good conduct time" as it is related to appellant's potential prison sentence. We affirm.

## I. BACKGROUND

Skolnik's wife, Amber Skolnik, arrived home in the early hours of April 28, 2007, after a night out. Skolnik confronted her about her whereabouts and a violent, physical altercation ensued that resulted in Amber's death. Skolnik was indicted for the alleged murder of Amber Skolnik and pleaded not guilty. Skolnik changed his plea to guilty at the close of the State's evidence.

During the punishment phase of the trial, the State presented extraneous offense evidence consisting of a video of sexual acts involving Skolnik and his wife who was unconscious at the time due to alleged intoxication. The video was taken by Skolnik, in his home, two months prior to Amber's murder.

## II. DISCUSSION

### A. Admissibility of the Video

The standard of review for the admissibility of evidence is abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under an abuse of discretion standard we will uphold the decision of the trial court concerning the admissibility of evidence unless the ruling rests outside the zone of reasonable disagreement. *Id*.

In his first issue, Skolnik contends that the video offered by the State during the punishment phase of his trial was more prejudicial than probative and should have been excluded. *See* TEX. R. EVID. 403. Skolnik asserts that by allowing the video to be entered into evidence, the trial court permitted his character to be unfairly prejudiced and that the

2

acts performed on the video overshadowed any positive aspects of his life that might have otherwise mitigated his punishment. The State contends that the acts performed by Skolnik on the video were clearly "bad acts" and that the jury should be able to use this information when determining an appropriate sentence for Skolnik.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence of an extraneous offense is relevant when it reveals a pattern of lawbreaking, deception, and evasion or when it reveals a pattern of conduct. *See Ashire v. State*, 296 S.W.3d 331, 341 (Tex. App.–Houston [1st Dist.] 2009, no pet.); *Fowler v. State*, 126 S.W.3d 307, 311 (Tex. App.–Beaumont 2004, no pet.). Evidence is also relevant to sentencing if it "is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). "The test for relevancy of the evidence is much broader at the punishment stage, the purpose being to allow the fact finder as much useful information as possible in deciding the appropriate punishment for the individual defendant." *Mendiola v. State*, 924 S.W.2d 157, 163 (Tex. App.–Corpus Christi 1995, pet. ref'd).

Rule 403 states, however, that relevant evidence "may be excluded [at the punishment phase] if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." *Id*. "Unfair prejudice" means an undue tendency to suggest a decision on an improper basis. *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); *Flores v. State*, 125 S.W.3d 744, 746 (Tex. App.–Houston [1st Dist.] 2003, no pet.). "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence

3

will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991).

To determine whether the prejudicial value of the admitted relevant evidence outweighs its probative value, we may consider the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some emotional, yet indelible way; (3) the State's need for the evidence; and (4) the time the proponent needs to develop the evidence. *See Rodriguez*, 203 S.W.3d at 843. Evidence of prior crimes or bad acts may be used by the jury to determine what sentence is appropriate for the defendant. *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999). Moreover, article 37.07 of the code of criminal procedure provides that evidence of a defendant's bad acts is admissible following a finding of guilt regardless of the plea and "regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2009).

Importantly in this case, Skolnik was convicted under section 19.02 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 19.02(b). Section 19.02(d) is a provision of the murder statute which states that at the punishment phase of a trial, a defendant may raise the issue as to whether the murder arose from "the immediate influence of sudden passion arising from an adequate cause." *Id.* § 19.02(d). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed." *Id.* § 19.02(a)(2). "Adequate cause" is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). If the defendant can affirmatively prove by a preponderance of the evidence that the death was caused by sudden passion arising from

4

an adequate cause, the degree of the offense is reduced from a first-degree felony to a second-degree felony. *Id*.

Skolnik raised the issue of sudden passion at the punishment phase of his trial. Skolnik argued that he acted with rage, passion and resentment in the murder of his wife—that he did not plan to kill her, and that he only "lost it." Skolnik also asserted sudden passion in his closing argument, and the jury charge contained a provision in which the jury was given the option that it could unanimously find Skolnik acted under "sudden passion." In addition, Skolnik provided evidence that indicated he had been a law-abiding citizen leading up to his wife's murder. He testified that he had no criminal history and that he had served as a member of the United States Navy for eight years. Skolnik was also employed as an Investigative Assistant for the Department of Homeland Security at the time of Amber's murder. There is also evidence in the record that Skolnik was under the impression his wife was having one or more extra-marital affairs and had allegedly had others in the past. Testimony from Amber's family and Skolnik himself suggests that Amber was considering seeking a divorce from Skolnik before her death. Finally, the video in question contained graphic images of Skolnik performing sexual acts upon himself and his wife who was unconscious at the time, allegedly due to intoxication. Skolnik testified that he made the tape himself; both Skolnik and his wife appear in the video; Skolnik testified that he knew his wife was too incapacitated to consent and admitted that what he had done was wrong.

In this case, Skolnik pleaded guilty to violently murdering his wife by strangulation, drowning, and blunt head trauma. The probative value of the evidence and the State's need for the video were high because the State used the video to counter Skolnik's

assertion that he had murdered his wife because of "sudden passion," an assertion which would impact the jury's assessment of punishment, and to respond to the testimony that Skolnik had been a good, law-abiding citizen until he murdered his wife. *See Rodriguez*, 203 S.W.3d at 843; *Fowler*, 126 S.W.3d at 311; *Mendiola*, 924 S.W.2d at 163. Although the contents of the video could have emotionally affected the jury, we still conclude that the nature of the crime, the video's probative value, and the State's need for the evidence to counter Skolnik's assertions identified above outweigh any prejudicial weight the video may hold. *See id*. The video was relevant and highly probative. Thus, we conclude that the trial court did not abuse its discretion in allowing the State's evidence of extraneous misconduct to be admitted. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Martin*, 173 S.W.3d at 467. Skolnik's first issue is overruled.

### B. Charge Error

In his second issue, Skolnik argues that the trial court erred when it included language related to "good conduct time" in the jury charge. When confronted with a jury charge issue, an appellate court must first determine whether error exists in the charge and, if so, whether any harm extended from the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2006); *see Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

Skolnik challenges the following language from the jury charge:

> *Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time*. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a

6

prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

*It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.*

*You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.*

(Emphasis added.)[1]

Skolnik argues that the charge does not apply to him because he cannot accrue good conduct time due to his murder conviction and is therefore not eligible for mandatory supervision. *See* TEX. GOV'T CODE ANN. §§ 508.147–.148 (Vernon 2004), 508.149 (a)(2)

---

[1]The language used in the jury charge during the punishment phase of Skolnik's trial exactly follows the language of the Texas Code of Criminal Procedure. article 37.07, section 4(a), which states that "[i]n a penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court" the court shall include that language in the jury charge. *See* TEX. CODE. CRIM. PROC. ANN. art. 37.07 § 4(a).

(Vernon Supp. 2009). Skolnik contends that the language of the statute was harmful to him because the jury may have inferred that he would be eligible to receive good conduct time. The State asserts that the jury charge was a proper instruction required by article 37.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE. CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp. 2009). We agree—no error exists in the charge, the language of which included an instruction set forth by the Legislature.

Although Skolnik is correct that "good conduct time" is not available to him due to his murder conviction, *see* TEX. GOV'T CODE ANN. §§ 508.147–.148, the issue of the validity of the jury charge and its application to defendants convicted of murder has been settled by the State's highest criminal court. In *Luquis v. State*, a prison inmate pleaded guilty to murdering a fellow inmate. 72 S.W.3d 355, 357-58 (Tex. Crim. App. 2002). On appeal, appellant challenged the inclusion of a "good conduct time" instruction in the jury charge, stating that it was "misleading and erroneous." *Id.* at 362. In upholding the trial court's decision to include the good conduct time instruction, the court of criminal appeals stated that article 37.07, section 4(a) of the Texas Code of Criminal Procedure "requires the trial judge to instruct the jury in the precise wording that the statute recites." *Id*. at 363; *see* TEX. CODE. CRIM. PROC. ANN. art. 37.07, § 4(a). The language of 37.07, section 4(a) states that in cases where the defendant has been found guilty of murder and the jury is to assess punishment, "the court shall charge the jury in writing as follows . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a). The statute then proceeds to recite the exact language used in the given charge in the instant case. The use of the word "shall" indicates a mandatory duty, not a mere suggestion, for the trial court to follow the statute. *Luquis*, 72 S.W.3d at 363. The *Luquis* court also noted that it is only natural for a jury to speculate

8

as to how parole will impact a defendant's sentence, and article 37.07 "appears to be an effort to impart to the jury relevant information so that the inevitable wondering is both informed and circumscribed." *Id*. at 368-69 (Johnson, J., concurring).

A jury charge that follows the relevant statute is sufficient and, therefore, proper. *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994); *Escobar v. State*, 28 S.W.3d 767, 778 (Tex. App.–Corpus Christi 2000, no pet.). As in *Luquis*, Skolnik's jury charge tracked the language of section 4(a) exactly. *See Luquis*, 72 S.W.3d at 363. We therefore conclude that the trial court did not err in denying Skolnik's request to exclude the statutory language. *See Riddle*, 888 S.W.2d at 8; *Escobar*, 28 S.W.3d at 778. Because there was no error found in the charge, we need not determine if harm existed. *See Ngo*, 175 S.W.3d at 743; *see also Middleton*, 125 S.W.3d at 453. Skolnik's second issue is overruled.[2]

### III. Conclusion

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of July, 2010.

---

[2]Skolnik argues in his reply brief that the jury charge is unconstitutional and violates his due process rights. Texas Rules of Appellate Procedure state that an appellant "may file a reply addressing any matter in the appellee's brief." *See* TEX. R. APP. P. 38.3. A reply brief is not for the purpose of raising new issues. *See Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.–Dallas 2006, pet. denied); *see also Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.–San Antonio 2003, pet. denied). The State did not raise the due process issue that Skolnik addresses for the first time in his reply brief. Thus we do not reach the issue on appeal. *See* TEX. R. APP. P. 38.3; *Dallas County*, 183 S.W.3d at 104.