**Affirmed and Memorandum Opinion filed May 29, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00949-CR
### NO. 14-12-00950-CR

---

### ABRAHAM JOSEPH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause Nos. 1359481 & 1359482**

---

## M E M O R A N D U M   O P I N I O N

Appellant Abraham Joseph was convicted of two counts of felony aggravated sexual assault by a public servant. On appeal, he contends that the trial court erred by admitting extraneous-offense evidence. Further, he contends the trial court erred by overruling his objections and denying his motions for mistrial during the State's closing argument. We affirm.

BACKGROUND

Complainant Angela,[1] an immigrant from El Salvador, was a waitress at a Houston nightclub. At the time of the trial, she had been residing in Houston for less than three years and spoke very little English. Joseph was a Houston police officer that frequently patrolled the area around the nightclub.

The trial record reflects that about two months before the charged offense, Angela and another employee encountered Joseph in his patrol car as they walked to a store. According to the record, Joseph asked for Angela's name. As she approached him, he grabbed her, pulled her towards his open car door, and put his hand under her skirt. At trial, Angela identified Joseph as the man who had touched her on this occasion.

According to Angela's trial testimony, on the night of January 2, 2011 Joseph pulled up to the nightclub in his patrol car while Angela and another man, Giovanni, were standing outside talking. Joseph yelled something at Angela and Giovanni. Angela did not understand him. Joseph handcuffed Giovanni and placed him in his patrol car. Joseph then turned to Angela, pushed her on top of the hood of Giovanni's car, and grabbed her genitals. She tried to say, "no touch," but instead spoke Spanish to which Joseph responded, "[n]o comprende. I don't understand." Joseph handcuffed her and put her into the patrol car with Giovanni.

Trial testimony reflects that Joseph drove them to a gas station, released Giovanni, and told him to leave. Joseph then drove to a nearby park with Angela still locked in the patrol car. At the park, he pulled Angela from the car and forcefully had sexual intercourse with her, penetrating her mouth and sexual organ with his sexual organ. After the incident, Angela contacted law enforcement

---

[1] To protect the privacy of the complainant in this case, we identify her by the pseudonym "Angela."

authorities, which led to the two indictments in this case: one charging sexual assault by Joseph's penetration of the complainant's mouth, and one charging sexual assault by Joseph's penetration of the complainant's sexual organ. Joseph pleaded "not guilty" to the charges.

In her opening statement at trial, defense counsel stated that the sexual encounter was consensual and that Angela had agreed to the encounter. Defense counsel also stated that Angela stood to benefit from her allegations, claiming, "[y]ou will learn, as the prosecutor has already pointed out, that not only is there a civil suit with quite a lot of money at stake, you will learn that there are other benefits that the witnesses in this case stand to be able to achieve[.]" During cross-examination of Angela, defense counsel established that Angela had applied for a U-Visa, an immigrant permit for victims of a violent crime.

The State offered testimony from two other women who reported similar encounters with Joseph. Defense counsel objected to the testimony, citing Texas Rules of Evidence 403 and 404(b). The State argued the testimony would show the charged offenses in the case were not consensual and that the testimony was admissible to prove Joseph's motive, plan, and opportunity. After hearing the offered testimony of one of the women, Christina,[2] outside the presence of the jury, the trial court found the testimony to be more probative than prejudicial. Defense counsel's objections were overruled, and Christina's testimony was admitted. Christina testified that Joseph had sexually assaulted her on two previous occasions: once in August 2010, and again just hours before the assault on Angela.

Additionally, the State offered evidence of Joseph's DNA on Angela's clothing and on the ground at the park, GPS evidence tracking Joseph's patrol car

---

[2] To protect the privacy of the extraneous-offense witness in this case, we identify her by a pseudonym, "Christina."

to the park at the time of the alleged events, and video surveillance evidence from the gas station which showed Joseph releasing Giovanni and driving away.

The jury convicted Joseph of both counts of aggravated sexual assault and assessed his punishment at imprisonment for life in each cause. The trial court ordered the sentences to run concurrently.

ANALYSIS

## I. Extraneous-Offense Testimony

In his first issue, Joseph asserts that the trial court violated Texas Rules of Evidence 403 and 404(b) by allowing Christina's extraneous-offense testimony. According to Joseph, her testimony served only to improperly demonstrate his propensity to engage in inappropriate sexual conduct while he was on the job, and its probative value was substantially outweighed by of the danger of unfair prejudice.

### A. The Testimony

Christina testified that Joseph had sexually assaulted her on two occasions prior to the charged offense. The record reflects that Christina was a waitress at the same nightclub as Angela and worked the same evening-to-morning shift as Angela. Christina, like Angela, identified herself as Hispanic. Unlike Angela, Christina spoke both Spanish and English fluently. Christina testified that during all her encounters with Joseph, he wore his uniform and badge, and he pulled up to the nightclub in his patrol car.

Christina testified that she first encountered Joseph when he pulled her aside while she was standing outside the nightclub with another man. Joseph poured out the man's beer and ordered the man inside. Joseph next processed Christina's information in a computer in his patrol car, discovering that she had outstanding

4

traffic warrants. Joseph threatened to take her to jail because of the warrants if she did not follow him. Christina testified that she followed him in her car to a pharmacy, where he then placed her into his patrol car and drove to a secluded area behind an abandoned building. Joseph removed her clothing and had sexual intercourse with Christina against her wishes. Afterward, he ordered her not to tell anyone or he would take her to jail.

Christina's second encounter with Joseph occurred in the early morning of January 2, 2011, roughly two hours before the assault on Angela. Christina testified that Joseph again ordered her to follow him in her car to a nearby location, where he put her in his patrol car and threatened to take her to jail. Christina testified that Joseph drove her to a nearby park where he motioned for her to perform oral sex on him. Christina testified that she complied because she was fearful of being taken to jail and the effect it would have on her children. The record reflects that this park was the same location where Joseph took Angela later that night.

### B. Standard of Review

We review the admissibility of extraneous-offense evidence under an abuse-of-discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As long as a trial court's ruling is within the zone of reasonable disagreement about the availability of a particular inference, an appellate court should affirm. *See id*. A trial court abuses its discretion and goes beyond the zone of reasonable disagreement in evidentiary rulings when it acts without reference to any guiding rules and principles. *Id*. at 380.

### C. Rule 404(b)

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

5

probable than it would be without the evidence." Tex. R. Evid. 401. Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, extraneous-offense evidence may be admissible when it has relevance apart from the prohibited use of character conformity. *See id.*; *Montgomery*, 810 S.W.2d at 387. Such extraneous-offense testimony may be relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.* This list is illustrative rather than exhaustive. *See De La Paz*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Extraneous offense testimony may also be admitted to rebut a defensive issue that negates one of the elements of the defense. *Id.*

Courts have recognized a defendant's modus operandi—i.e., a defendant's "distinctive and idiosyncratic manner of committing criminal acts"—as an exception to the general rule excluding extraneous-offense if the modus operandi tends to prove a material fact at issue, other than propensity. *See Casey v. State*, 215 S.W.3d 870, 880–81 (Tex. Crim. App. 2007). When a defensive theory of consent is raised, a defendant necessarily places at issue his intent to commit the crime. *Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980). Thus, modus operandi evidence has been used to prove lack of consent as a fact at issue in a sexual assault case. *See Casey*, 215 S.W.3d at 881–82; *Martin v. State*, 173 S.W.3d 463, 466–68 (Tex. Crim. App. 2005); *Rickerson v. State*, 138 S.W.3d 528, 531–32 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

In *Martin*, the complainant testified that she became acquainted with Martin at a private club, where he falsely told her he was a deputy in the Polk County Sheriff's Department. *Martin*, 173 S.W.3d at 464. She agreed to meet him at a mobile-home park several days later, but once she arrived he took her to an

unoccupied mobile home and forced her to have intercourse with him. *Id.* Martin disputed that he had assaulted her and testified that their intercourse was consensual. *Id.* at 465. After Martin testified, the State called a rebuttal witness. She testified that, several months before the alleged offense, she met Martin through a telephone "date line." She stated that Martin told her he was a detective with the Liberty County Sheriff's Department. He later met her at an apartment and sexually assaulted her. *Id.* Because Martin falsely claimed to be a law enforcement officer to "pick up" both the complainant and the extraneous-offense witness, both women agreed to meet Martin in a residential area, both women were assaulted on the first face-to-face meeting after initial contact, and both assaults took place in a residence, the court held that the extraneous-offense testimony was admissible as sufficiently distinctive modus operandi evidence. *See id.* at 468.

Likewise, Christina's extraneous-offense testimony is sufficiently distinctive and similar to the charged offenses to qualify as modus operandi evidence relevant to the issue of consent. *See id.* Both women in this case were waitresses at the same nightclub, working the same shift. Both women identified as Hispanic. Both women were approached by Joseph while he wore his uniform and drove his patrol car. Both women were assaulted in the same park and on the same night. *See id.* at 468; *Webb v. State*, 995 S.W.2d 295, 299 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding extraneous offenses sufficiently similar where "[a]ll complainants were topless dancers, all the complainants had met at a topless club, all of the assaults occurred in Appellant's home, and all involved physical struggles and violence").

Joseph argues that Christina's ability to speak both English and Spanish fluently is a fatal dissimilarity to a finding of modus operandi, but we disagree that this factor is controlling. Furthermore, we have noted in the past that, when the

7

contested material issue is intent, rather than identity, an extremely high degree of similarity is not required. *See Webb*, 995 S.W.2d at 299.

Given the remarkable similarities between the charged offense and the extraneous offense testimony in this case, the trial court did not abuse its discretion in determining the extraneous offenses were admissible. *See Casey*, 215 S.W.3d at 881; *Martin*, 173 S.W.3d at 648.

### D. Rule 403

Even if relevant evidence is offered and admissible under Rule 404(b), a trial court must nonetheless exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Montgomery*, 810 S.W.2d at 387; *Bargas v. State*, 252 S.W.3d 876, 892–93 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Making this determination requires balancing the following factors: (1) the strength of the evidence in making a fact more or less probable; (2) the potential of the extraneous-offense evidence to impress the jury in some irrational but indelible way; (3) the amount of time the proponent needed to develop the evidence; (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Bargas*, 252 S.W.3d at 892–93. When the record is silent as to the trial court's balancing of these factors, we presume the trial court conducted the balancing test. *Id.* We review a trial court's ruling under Rule 403 for an abuse of discretion. *Montgomery*, 810 S.W.2d at 391.

The first factor weighs in favor of admissibility because the evidence was relevant to the issue of intent. By arguing that his encounter with complainant was consensual, Joseph put his intent to commit the offense at issue. *See Rubio*, 607 S.W.2d at 500–501. Christina's testimony that Joseph coerced her through his position as police officer, took her to the same place as Angela to assault her, and did so on the same night strongly rebuts Joseph's defensive argument that Angela

was fabricating her story in order to gain a U-Visa and a civil-lawsuit victory. Because the extraneous-offense evidence was so similar to the charged offense, it was probative as modus operandi evidence to rebut the issue of intent. *See Casey*, 215 S.W.3d at 880–81; *Martin*, 173 S.W.3d at 468.

The second and third factors also weigh in favor of admissibility. The extraneous offense was no more heinous than the crime for which appellant was indicted, so the testimony was not likely to create such prejudice in the minds of the jury that it would have been unable to limit its consideration of the evidence to its proper purpose. *See Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996). Any danger that Christina's testimony may have impressed the jury in a prejudicial way is overshadowed by its probative value. *See Bargas*, 252 S.W.3d at 893 (viewing prejudicial tendencies of extraneous-offense testimony in sexual assault case as outweighed by its probative value when it was used to rebut a defensive issue). Furthermore, Christina's testimony was developed relatively quickly, taking only one of ten days of guilt-innocence proceedings.

The State's need for this testimony was also significant, favoring admissibility under the fourth factor in *Bargas*. Joseph urges that the volume of other evidence—namely the DNA evidence, GPS evidence, and video surveillance showing Joseph kicking the man out of his patrol car at the gas station—demonstrates the absence of the State's need for Christina's testimony. But none of this evidence tends to discredit Joseph's position that Angela consented to the encounter. Because Joseph contested Angela's allegations on a theory of consent, the State demonstrated the need to counter Joseph's theory that Angela fabricated the allegations. *See Casey*, 215 S.W.3d at 884.

Considering the above factors, we conclude the trial court did not abuse its discretion under Rule 403 in admitting the extraneous-offense evidence. *See*

*Montgomery*, 810 S.W.2d at 391–92; *Bargas*, 252 S.W.3d at 893–94. We overrule appellant's first issue.

## II. Allegations of Improper Argument

Joseph argues in two issues that the trial court erred by denying his motions for mistrial during the State's closing arguments and by overruling Joseph's objections to the State's comments during closing arguments. According to Joseph, the prosecutor commented on Joseph's failure to testify at trial in violation of his state and federal constitutional rights, as well as his state statutory rights.

### A. Trial Court's Denial of Motions for Mistrial

The prosecutor made the following comments during closing argument when discussing whether Angela consented to the sexual acts:

> Now, since we are talking about consent, let's go there. . . . You know what the State's case is. We are not going to beat a dead horse. We have been here for a month; but at this point, I want you to ask yourself, "What is the defense's case?" Do you know, because I don't. I have been here a month, and I still don't know.
>
> . . .
>
> [W]hat is the defense case? Ask yourself that because in opening, the defense counsel told you, looked you right in the eyes, and said . . . "Abraham Joseph did nothing that was not by agreement." In plain English, [Angela] consented to what happened to her. . . . I kept waiting and waiting and waiting for a piece of evidence, just one, just one witness, one piece of evidence, something that would tell us that. I am still waiting.
>
> . . .
>
> What are the defenses to rape? What are they? There are two. The first one is, not me. It wasn't me. Somebody else must have done it. And the second one is, well, it was me; but it was consensual, okay? Do you think he wants to come to you and have to admit, oh, you are very disappointed . . .
>
> . . .

So do you think he wants to have to say consent . . .

. . .

Now, let's talk shop a little bit on the rest of my time before I turn it over to the defense counsel and Mr. Bily; but why are we here? Why have we been here for a month? Are we here because we think that we are going to get a not guilty out of this? No.

After each comment, defense counsel objected and the trial court sustained each objection. The jury was instructed to disregard the comments and the defense's request for mistrial was denied.

As to sustained objections, the only adverse ruling—and thus the only occasion for error—was the trial court's denial of Joseph's motions for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). We consider whether the refusal to grant appellant's motions for mistrial was an abuse of discretion. *See id*. Three factors are balanced to determine whether the trial court abused its discretion in denying a mistrial for improper jury argument: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). This analysis is conducted in light of the trial court's curative instruction. *Hawkins*, 135 S.W.3d at 77. In most circumstances, an instruction to disregard improper argument is considered a sufficient response by the trial court. *Longoria v. State*, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000)). Thus, a mistrial will only be required in extreme circumstances where the prejudice is incurable. *Hawkins*, 135 S.W.3d at 77.

In reviewing the first factor, the magnitude of any prejudicial effects of the prosecutor's comments was lessened because the record reflects they were embedded within other proper argument that allowed the jury to draw a legitimate inference. *See Archie*, 340 S.W.3d at 741 ("Because the improper questions were embedded within other remarks that invited the jury to draw a *legitimate* inference from information contained in the appellant's [out-of-court statement], we think the magnitude of the prejudice was concomitantly diminished.") (emphasis in original). In this case, the prosecutor's initial comments were buttressed by proper argument where he clarified that, "anything that was told to you, you never heard." This argument can properly be interpreted as referring to the defendant's failure to produce evidence other than his own testimony. *See Saldivar v. State*, 980 S.W.2d 475, 501–02 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *see also Smith v. State*, 65 S.W.3d 332, 338–39 (Tex. App.—Waco 2001, no pet.) (prosecutor's closing comment that defendant failed to present his injured leg to the jury was not a comment on failure to testify because defense counsel had promised to display the leg, and such display could have been made without defendant testifying).

The second factor looks to the measures adopted to cure the misconduct. *Archie*, 340 S.W.3d at 739. In most circumstances, an instruction to disregard improper argument is considered a sufficient response by the trial court. *Longoria v. State*, 154 S.W.3d at 763–64. This is true even for comments on the defendant's failure to testify, except in the most blatant cases. *Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). A reviewing court generally presumes the jury followed the trial court's instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987). We do the same here, and presume that any misconduct was cured by the trial court's repeated instructions to the jury to disregard the prosecutor's improper remarks. *See Longoria*, 154 S.W.3d at 763–64.

The third factor—the certainty of the conviction absent the misconduct—also weighs heavily in favor of the trial court's ruling. The record reflects that DNA evidence links Joseph to the events in question. GPS evidence places Joseph at the park at the time Angela alleged the incident took place, and video surveillance corroborates Angela's testimony that Joseph kicked a man out of the patrol car at a gas station before taking her to the park. Christina's extraneous-offense testimony about a remarkably similar assault rebutted Joseph's defensive theories of consent and fabrication by Angela. *See Martin*, 173 S.W.3d at 468. Given this record, Joseph's conviction was sufficiently certain regardless of the alleged misconduct. *See Newby v. State*, 252 S.W.3d 431, 439 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding denial of mistrial in sexual assault conviction was not an abuse of discretion when appellant's conviction was "fairly certain" given the unambiguous testimony of complainant). We conclude that the trial court did not abuse its discretion in denying Joseph's motions for mistrial. *See Archie*, 340 S.W.3d at 738–79. We overrule Joseph's second issue.

### B. Trial Court's Decision to Overrule Objections to Improper Argument

Joseph also complains of the following comments, to which he objected as improper comment on his failure to testify. The objections in question came when the prosecutor explained two general defenses to rape, stating, "The first one is, not me. It wasn't me. . . . And the second one is, well, it was me, but it was consensual . . ." The prosecutor continued, arguing, " . . . the 'not me' [defense] goes sailing . . . You don't get to say 'not me,' okay? You don't get to say it when there is a mountain of evidence against you." The trial court overruled Joseph's objections to both of the "not me" references.

### 1. Preservation of Complaint for Appellate Review

Initially, the State contends that Joseph failed to preserve this complaint for

appellate review. To preserve error for appellate review, a defendant must make a timely request, objection, or motion in the trial court. *See* Tex. R. App. 33.1; *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). The objection must be stated with "sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context . . ." *See* Tex. R. App. P. 33.1.

Here, Joseph's trial counsel objected to the prosecutor's comments as improper argument and "shifting the burden to call any witnesses, including the defendant, to the defense." The State claims that Joseph's objection did not preserve his complaint for appellate review because we have previously held that an objection to "putting the burden on the defense" did not preserve for review a prosecutor's alleged comments on a defendant's failure to testify. *See McLendon v. State*, 167 S.W.3d 503, 510 (Tex. App.—Houston [14th Dist.] 2005). Unlike the facts in *McLendon*, trial counsel in this case makes reference to shifting the burden to call any witness, "including the defendant," to the stand. In context, trial counsel's objections are objections to the prosecutor's alleged comments on Joseph's failure to testify. Thus, Joseph's complaint is preserved for appellate review.

### 2. Analysis

Joseph asserts the trial court abused its discretion in overruling his objections because the prosecutor's comments highlighted his failure to testify, violating his constitutional and statutory rights. There are four permissible areas of argument for prosecutors: (1) summation of the evidence; (2) reasonable deductions from evidence; (3) responses to argument by opposing counsel; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Commenting on an accused's failure to testify violates the accused's

14

constitutional, as well as statutory, privileges against self-incrimination. U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. art. 38.08; *Archie*, 340 S.W.3d at 738; *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001).

An improper comment on an accused's failure to testify occurs when it was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Bustamante*, 48 S.W.3d at 765. We consider the offending language from the jury's perspective, and an implication that the comment referred to the defendant's failure to testify must be clear. *Id*. If a prosecutor's remark calls the jury's attention to the absence of evidence that only Joseph's testimony can supply, the remark is improper. *See Garrett v. State*, 632 S.W.2d 350, 353 (Tex. Crim. App. [Panel Op.] 1982). But if the remark can reasonably be construed to refer to the failure to provide evidence other than Joseph's own testimony, the comment is not improper. *See Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999). Thus, a mere indirect or implied allusion to the failure to testify does not violate Joseph's right to remain silent. *Bustamante*, 48 S.W.3d at 765. Furthermore, there are no "trigger" words or phrases, such as "I" or "he" or "she," which make any jury argument automatically improper. *Cruz v. State*, 225 S.W.3d 546, 549 (Tex. Crim. App. 2007). Rather, the impermissibility of a reference is determined by the entirety of the prosecutor's comments, taken in the context in which the words were used and heard by the jury. *Id*.

When considered from the jury's perspective, the use of the words "not me" in this case can be reasonably construed as "a rhetorical device to explain to the jury the elements of the law" of sexual assault. *See Cruz*, 225 S.W.3d at 549 (viewing prosecutor's statement that, "in order to have self-defense, what has to

15

happen is someone says, 'Yeah, I committed this crime'" as proper jury argument because the comment referred to appellant's written statements and argument at trial); *Kan v. State*, 4 S.W.3d 38, 45 (Tex. App.—San Antonio 1999, pet ref'd) (holding that rhetorical questions "What contradicted that sexual conduct occurred? What did Defendant put on there to show that sexual contact did not happen?" in trial for sexual assault of a child were a proper summary of evidence and did not call jury's attention to lack of evidence only defendant could provide). Moreover, nothing in the record demonstrates that the prosecutor intended to comment on Joseph's failure to testify. Taken in context, we hold the prosecutor's comments were not of such a character that the jury would necessarily and naturally take them as a comment on Joseph's failure to testify. *See Bustamante*, 48 S.W.3d at 765.

We conclude that the trial court did not abuse its discretion in overruling defense counsel's objections. *See Cruz*, 225 S.W.3d at 549; *Kan*, 4 S.W.3d at 45. Therefore, we overrule Joseph's third issue.

The trial court's judgments are affirmed.


/s/    Ken Wise
        Justice


Panel consists of Justices McCally, Busby, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

16